Bernice POLANSKY, Joni Polansky, Darlene Leigh, Olivia Cornyn, Nora Brandon, and Jennifer Wilson, Appellants,

v.

SOUTHWEST AIRLINES CO., Ruth Landau, and Ginger Hardage, Appellees.

No. 04–01–00286–CV.

Court of Appeals of Texas, San Antonio.

Feb. 13, 2002.

Steven E. Clark, Clark & Associates, Dallas, for appellants.

J. Joe Harris, Bracewell & Patterson, L.L.P., San Antonio, for appellees.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by SANDEE BRYAN MARION, Justice.

In this workers' compensation retaliation case, we consider whether Southwest Airlines Company's ("Southwest") reason for terminating the employment of Bernice Polansky, Joni Polansky, Darlene Leigh, Olivia Cornyn, and Nora Brandon was non-discriminatory as a matter of law. We

also consider whether the actions of Southwest, Ruth Landau, and Ginger Hardage were an invasion of all the appellants' privacy. We conclude that summary judgment in favor of the appellees was proper; therefore, we affirm.

## BACKGROUND

*The parties*

All the appellants are or were Southwest employees working in Southwest's San Antonio Telephone Reservations Center. During their employment, appellants were covered by a collective bargaining agreement between Southwest and the International Association of Machinists and Aerospace Workers. The agreement provides that the maximum amount of time available for leaves of absence is thirty-six months, and this rule applies to medical leaves of absence resulting from occupational injuries as well as leaves due to other reasons. With regard to occupational injuries, the agreement provides: "If the employee has not returned to duty by the end of the thirty-six (36) month period, he shall be severed from employment and have all seniority rights forfeited." With regard to other medical leaves of absence, the agreement provides: "If the employee has not returned to duty by the end of the thirty-six (36) month period, the employee shall be severed from employment and have all seniority rights forfeited."

Appellants, Bernice Polansky, Joni Polansky, Darlene Leigh, Olivia Cornyn, and Nora Brandon contended they sustained accidental bodily injuries because Southwest did not provide them with a safe work place, *i.e.*, they worked in a "sick building." They filed workers' compensation claims, and it was determined they had compensable injuries. While they were on unpaid medical leave, Southwest terminated the Polanskys, Leigh, Cornyn,

and Brandon pursuant to the thirty-six month leave policy.

Appellant, Jennifer Wilson, is still employed by Southwest.

Appellees, Ruth Landau was employed as Labor Counsel by Southwest from November 1989 to July 2000, and Ginger Hardage is Southwest's Vice President of Public Relations and Corporate Communications.

*Claims and proceedings*

In February 1994, attorney Robert Thompson filed an EEOC charge of disability discrimination on behalf of the Polanskys, Leigh, Cornyn, and Brandon, alleging that Southwest failed to make reasonable accommodation for claimed disabilities ranging from neck problems to carpal tunnel syndrome. Appellants sought ergonomic modifications to their work stations.

After Thompson withdrew, appellants retained Randall Jackson, Les Mendelsohn and the law firm of Speiser, Krause, Madole, Mendelsohn & Jackson ("the Speiser firm") to represent them on their EEOC charge. Eventually, the parties reached an agreement that appellants return to work. On December 14, 1994, appellants fired their attorneys. In July 1995, appellants filed a malpractice claim against Jackson and Mendelsohn, individually, and the Speiser firm. The appellants amended their petition to add Southwest, alleging Southwest did not accommodate their work station/repetitive motion disabilities. Eventually, Jackson, Mendelsohn, the Speiser firm, and Southwest were granted summary judgment, which was affirmed by this court. *See Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson*, 966 S.W.2d 645 (Tex.App.-San Antonio 1998, pet. denied).

In 1995, appellants filed another round of EEOC charges against Southwest, al-

leging that their place of employment was a "sick building," that their physician would not permit them to return to work, and that Southwest discriminated against them by opposing their "sick building" workers' compensation claims.

Bernice Polansky and Nora Brandon filed separate suits against Southwest for wrongful termination based on Texas Labor Code section 451.001. *See* TEX. LAB. CODE ANN. § 451.001 (Vernon 1996). Jennifer Wilson sued Southwest, Hardage, and Landau for invasion of privacy arising from information that appeared in a magazine article about Southwest's "sick building." Polansky's petition was later amended to add Joni Polansky, Olivia Cornyn, and Darlene Leigh as plaintiffs and Hardage and Landau as defendants, and to assert the addition claim of invasion of privacy similar to that asserted by Wilson. All actions were ultimately consolidated.

Southwest, Hardage, and Landau filed two motions for partial summary judgment: one addressing the invasion of privacy claim and the other addressing the wrongful termination claim. The trial court granted both motions, and this appeal ensued.

## SECTION 451.001 CLAIMS

Southwest moved for summary judgment on the retaliation claims filed by the Polanskys, Leigh, Cornyn, and Brandon, asserting it terminated their employment for a legitimate, non-discriminatory reason: the collective bargaining agreement's policy regarding the maximum amount of time available for leaves of absence. On appeal, appellants challenge the summary judgment on their Section 451.001 claims on two grounds: the trial court erred in overruling their objection to Southwest's summary judgment proof, and Southwest did not establish that the collective bargaining agreement provision is a "uniform-

ly company-wide applied provision to any and all company employees who fall within its provisions."

*Standard of review*

Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that element. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex.App.-Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon,* 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in her favor. *Id.* We review rulings concerning the exclusion of summary judgment evidence under an abuse of discretion standard. *Barraza v. Eureka Co.,* 25 S.W.3d 225, 228 (Tex.App.-El Paso 2000, pet. denied).

*Southwest's summary judgment proof*

Southwest submitted the affidavit of Patricia Franklin, who, at the time of her affidavit, managed Southwest's San Antonio Reservations Center. Attached to her affidavit were the termination letters sent to the Polanskys, Leigh, Cornyn, and Brandon. Appellants objected to her affidavit on the grounds that it contained hearsay and failed to properly authenticate the termination letters as business records. Appellants complained that some of the letters were signed on Franklin's behalf or by former managers. Southwest filed a motion for consideration of Franklin's supplemental affidavit, the trial court

granted the motion, and overruled appellants' objections.

On appeal, appellants contend the trial court abused its discretion in overruling their objection and considering Franklin's supplemental affidavit. Appellants offer no support for their contention that the court abused its discretion in granting Southwest's motion to supplement, other than to suggest that Franklin's original affidavit contained substantive, and not procedural, defects. We need not address the merits of this issue because the reason for appellants' termination, the dates their leave of absence became effective, and the dates on which they were terminated are contained within the affidavit of Marty Donohue, the Southwest employee responsible for attendance and leave records at the San Antonio Reservations Center. Appellants do not object to Donohue's affidavit.

*Southwest's neutral reason for termination*

■■■ The Polanskys, Leigh, Cornyn, and Brandon claim they were discharged by Southwest in violation of the Texas Workers' Compensation Act because they filed workers' compensation claims. The Act prohibits employers from discharging an employee merely because the employee files a workers' compensation claim in good faith. TEX. LAB.CODE ANN. § 451.001(1) (Vernon 1996). Section 451.001 is a statutory exception to the Texas common law doctrine of employment-at-will. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 589 (5th Cir.1995); *see also Continental Coffee Prod. Co. v. Cazarez,* 937 S.W.2d 444, 453 (Tex.1996). The purpose of the statute is to protect employees who are entitled to benefits under the workers' compensation law and to prevent them from being discharged for taking steps to collect such benefits. *Castor v. Laredo Cmty. Coll.,* 963 S.W.2d 783, 785 (Tex.App.-San Antonio 1998, no pet.).

■■■ An employee asserting a violation of Section 451.001 has the initial burden of demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits. *Castor,* 963 S.W.2d at 785; *see* TEX. LAB. CODE ANN. § 451.002(c) (Vernon 1996) (placing burden of proof on employee). Although the employee can meet this burden without showing that she was fired solely because of the filing of the worker's compensation claim, she must show that the filing of the claim was at least a determining factor in the discharge. *Castor,* 963 S.W.2d at 785. This causal connection is an element of the employee's prima facie case, and may be established by direct or circumstantial evidence. *Continental Coffee,* 937 S.W.2d at 450–51.

Southwest did not argue in its motion for summary judgment that the Polanskys, Leigh, Cornyn, and Brandon could not discharge their initial burden of showing that a causal link existed between their workers' compensation claims and their termination. Therefore, the trial court did not rely on that legal theory in granting summary judgment, and we will assume that there is a fact issue concerning whether the link exists. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993).

■■■ An employer is entitled to summary judgment in a Section 451.001 retaliatory discharge action when a legitimate, non-discriminatory reason for the discharge is established and the employee fails to produce evidence of a retaliatory motive. *See Continental Coffee,* 937 S.W.2d at 451; *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313–14 (Tex.1994); *Castor,* 963 S.W.2d at 785. The uniform enforcement of a reasonable absence-control provision, like the thirty-six month maximum leave provision here,

does not constitute retaliatory discharge. *Carrozza,* 876 S.W.2d at 313. An employer who terminates an employee for violating such a provision cannot be liable for retaliatory discharge as long as the rule is uniformly enforced. *Continental Coffee,* 937 S.W.2d at 451.

Southwest contended it fired the appellants because they were on leave for more than thirty-six months. The Polanskys, Leigh, Cornyn, and Brandon contend Southwest did not prove that the thirty-six month maximum leave policy was uniformly enforced; therefore, they conclude they did not have the burden to produce controverting evidence of a retaliatory motive.

As summary judgment proof, Southwest submitted the affidavit of Marty Donohue, the Southwest employee responsible for attendance and leave records at the San Antonio Reservations Center since 1983. Donohue stated, "During the approximately eighteen years that I have been responsible for attendance and leave records, there has been no reservation sales agent at the San Antonio Reservations Center who has been on medical leave absence for more than thirty-six months whose employment has not been terminated. This is true of employees on a medical leave of absence due to an on-the-job injuries [sic], and it is true for employees on a medical leave of absence due to personal illness which is not job-related. In either case, the result is the same."

Southwest's summary judgment evidence is sufficient to establish the existence of a reasonable, uniformly-applied policy regarding leaves of absence, particularly where there is no summary judgment evidence to the contrary. Because Southwest established a legitimate, non-discriminatory reason for the discharge, the burden shifted to appellants to establish a retaliatory motive; a burden they did not meet. Absent controverting evidence be-

lying Southwest's neutral explanation, summary judgment on appellants' Section 451.001 claims was proper.

## PRIVACY CLAIMS

■ All appellants complained that Southwest, Landau, and Hardage invaded their privacy by publishing private facts in two documents: a February 26, 1996 memorandum prepared by Landau and delivered by Hardage to two reporters, and an article published in the March 28–April 3, 1996 issue of the *San Antonio Medical Gazette.* Appellants complain that these documents disclosed that they had (1) filed EEOC charges and workers' compensation claims concerning alleged on-the-job injuries and illnesses, (2) given various medical and non-medical reasons for absences, and (3) received warnings for poor performance. Appellants' pleadings do not specify whether they are complaining that private information about them was wrongfully publicized or that their right to be left alone was violated. *See generally Industrial Found. of the South v. Texas Indus. Accident Bd.,* 540 S.W.2d 668 (Tex.1976) (recognizing freedom from public disclosure of embarrassing private facts); *Billings v. Atkinson,* 489 S.W.2d 858, 859–60 (Tex.1973) (recognizing right to be left alone); *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 621 (Tex. App.-Corpus Christi 1992, writ denied) (discussing all recognized theories of recovery for invasion of privacy); *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 6 (Tex.App.-Corpus Christi 1991, no writ) (comparing various invasions of privacy).

■ In its motion for summary judgment, Southwest asserted appellants could not establish any of the following three elements essential to recovery for public disclosure of private facts: (1) publicity given to matters concerning their private life; (2) the publication would be highly

offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized is not of legitimate public concern. *See Industrial Found.*, 540 S.W.2d at 682. The heart of this privacy interest is an individual's exclusive prerogative to determine when, under what conditions, and to what extent she will consent to divulge her private affairs to others. *Jennings v. Minco Tech. Labs, Inc.*, 765 S.W.2d 497, 500 (Tex.App.-Austin 1989, writ denied).

■ In their summary judgment response and on appeal, appellants contend their privacy was violated by (1) an intentional intrusion (2) upon their seclusion, solitude, or private affairs (3) that would be highly offensive to a reasonable person. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993). Courts require that such an intrusion be unreasonable, unjustified, or unwarranted. *Billings*, 489 S.W.2d at 860; *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 253 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

■ Whether appellants' cause of action is one for publication of private facts or unwarranted intrusion into private affairs, common to both claims is the requirement that the action taken be "highly offensive to a reasonable person." As with the outrageousness requirement for intentional infliction of emotional distress and the requirement in slander cases that words be capable of a defamatory meaning, whether something is "highly offensive" is first a matter of law; a certain threshold of offensiveness is required. *Shaheen v. Motion Indus., Inc.*, 880 S.W.2d 88, 93 (Tex.App.-Corpus Christi 1994, writ denied). We conclude that Southwest conclusively negated this requirement of appellants' invasion of privacy cause of action.

Beginning in 1995, appellants actively publicized their contention that they suffered injuries because they worked in a "sick building." Over a period of six years, appellants held press conferences; appeared on at least six television newscasts; picketed; distributed flyers; have been interviewed and quoted in local and national newspapers and magazines, including *Time Magazine*; filed EEOC charges; filed workers' compensation claims; sued their former attorneys for malpractice over the alleged mishandling of their EEOC charges; sued Southwest for disability discrimination; sued the equipment manufacturers and contractors who provided equipment services to Southwest; and disclosed aspects of their physical, mental, and emotional ailments. Appellants do not dispute Southwest's contention that Southwest did not initiate any publicity.

Instead, Southwest acted in a responsive mode. In 1996, Alan Berg of the television station WFAA contacted Hardage about a story he was going to air based on his interview with Southwest employees, including Bernice Polansky, who claimed Southwest's "sick building" was affecting their health. Berg called Hardage to give Southwest an opportunity to respond to the allegations. To prepare a response, Hardage spoke to Landau about appellants' disability complaints. Because appellants' history was so voluminous, Landau prepared a memorandum summary for Hardage in preparation for Hardage's interview with Berg; a copy of the memorandum was given to Berg. The memorandum did not mention the appellants by name, and Berg's story never aired. We conclude that the non-specific summary given to Berg in response to a story that never aired would not be highly offensive to a reasonable person.

During the week of March 28, 1996, the *San Antonio Medical Gazette* published an article entitled "Sick Building Syndrome Symptomatic vs. Psychosomatic." The

article's author stated the article was initiated by persons who claimed they worked at the Reservations Center, and that he contacted Southwest to allow it to respond to the "sick building" allegations and complaints that the building was causing employees to suffer numerous physical ailments and illnesses.

Bernice Polansky and Nora Brandon were interviewed for the article. The article described Polansky and Brandon as "patients without an illness ... suffer[ing] from a kaleidoscope of symptoms, from difficulty breathing to migraine headaches to forgetfulness...." Polansky was quoted as saying, "I used to be a happy person.... Then people started asking me what was wrong with me. All of a sudden I began walking around with an irritable, mean look all the time." The article stated that Polansky and Brandon "describe[d] torturing symptoms that sound like a character plagued by a mysterious anomaly in a B-movie: 'Chest pain. Gastrointestinal pain. Shortness of breath. My words would get all mixed up. I'd go into the kitchen to fix dinner and forget why I was in there. I didn't want to see my kids. I couldn't stand noise. I had hair loss and rashes, and major depression. It was like I was coming down with the flu, I'd ache all over and get chills, but it wasn't the flu.' " The article stated that "since being fired by Southwest Airlines in 1995 (after exceeding the 36 month maximum time allowed for being away from work due to worker's compensation claims) they say, they still continue to experience 'reactions to certain triggers.' The women judge their progress by 'good days' and 'bad days.' "

A sidebar to the article stated:

The air inside the Southwest Airlines Reservations Center made six women, including Bernice Polansky and Nora Brandon, sick enough they had to quit work, according to their Houston doctor, Andrew Campbell, M.D., who diagnosed the women with Sick Building Syndrome ("SBS").

In July 1995, armed with Campbell's diagnosis, five of the six women filed [EEOC charges] alleging Southwest Airlines discriminated against them when the company's worker's compensation carrier denied their claim, a decision upheld by the Texas Workers' Compensation Commission.

However, five of the women originally went out of work on carpal tunnel/repetitive motion trauma claims and were out for one-and-a-half to more than three years, according to Ginger Hardage ... and Ruth Landau. Landau says the women filed their first EEOC charge in February 1994, claiming discrimination on the basis of their alleged carpal-tunnel disabilities. In January 1996, they filed a lawsuit based on those charges. The women claimed SBS, according to Landau, only after they did not return to work when their disability time for carpal-tunnel had expired....

Hardage and Landau provided employment-record summaries of the women involved in the lawsuits (without specifying by name) which shows at least two of them had been given warnings about their poor attendance records. Some of the reasons they claimed for not coming to work were medically related-"migraine headaches, chronic abdominal pain, sinus problems." Others were not-"hung up at friends house," clock stopped working, "female problems," worried sick, nerves and "more female problems."

Polansky and Brandon say they have no motives for making illegitimate claims about the building, but Landau disagrees. "Things are pretty compelling if you consider the monetary wind-

fall these women could get," she says. After being out as much as three years on workers' compensation for carpal-tunnel, Landau says, the women could theoretically gain more worker's compensation benefits if they could prove SBS, because it is unrelated to carpal-tunnel.

Only Bernice Polansky and Nora Brandon were mentioned by name in the article.

We conclude that providing the article's author with the non-specific summary would not be highly offensive to a reasonable person. We also conclude that Hardage's and Landau's comments in the article would not be highly offensive to a reasonable person. The comments were offered in response to appellants' complaints, were of a general nature, and did not attribute a specific ailment to a specific employee. Given that the article stated, without attribution, that the women had filed workers' compensation claims and had been fired, Landau's comment that they had filed EEOC claims and workers' compensation claims and received warnings for poor performance would not be highly offensive to a reasonable person. Thus, summary judgment on appellants' invasion of privacy claims was proper.

## CONCLUSION

We affirm the trial court's judgment.