

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00300-CR

---

GERALD ANTHONY MORGAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CR2020-0381, Honorable Meredith Kennedy, Presiding

---

October 23, 2023

## DISSENTING OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

The elephant in the room is whether a parent can invade the "privacy" of his child. Minors generally do not have the right to privacy in the home of their parents, and Candace specifically lacked any such expectation on her phone. The majority holds a parent can look at his child's phone, but the instant the parent shares anything on the child's phone with himself, a crime has been committed. This is not the law in Texas. Accordingly, I respectfully dissent.

**A. The civil tort of invasion of privacy does not equate with the crime of invasive visual recording.**

As an initial matter, the majority adopts our sister court's definition of the civil cause of action for breach of privacy into the statute at issue here. The majority decides "intent to invade the privacy of the other person" is "intentionally intruding upon Candace's private affairs in a manner 'which would be highly offensive to a reasonable person of ordinary sensibilities.'" *See ante* (citing *Ex parte Metzger*, 610 S.W.3d 86, 102 (Tex. App.—San Antonio 2020, pet. ref'd)). This definition has not yet been adopted by the Second Court of Appeals, from whom this case was transferred, and is a matter of first impression for the transferring court.

The majority uses the civil tort of invasion of privacy to support its position, but it does so without fully developing the case law behind the tort. Even the San Antonio Court of Appeals requires the intrusion be unreasonable, unjustified, or unwarranted. *Polansky v. Southwest Airlines Co.*, 75 S.W.3d 99, 105 (Tex. App.— San Antonio 2002, no pet.). I suspect most Texas parents of ordinary sensibilities would stand for the position that full unfettered access to their child's phone is reasonable, justified, and warranted.

**B. Equating the intent to transmit the photograph alone is not evidence of intent to invade someone's privacy.**

The majority adopts the State's proposition equating the intent to "promote"[1] the image *itself* is an intent to invade someone's privacy:

> Appellant's acts of accessing and viewing the contents of Candace's phone are not prohibited by the statute. Moreover, the evidence indicated that Appellant and Mari owned and exercised supervisory authority over Candace's phone; they both had the password to the phone and

---

[1] The State equates the sending of the image to the defined word "promote" within the statute. The word is defined in Texas's obscenity laws, and it is questionable whether a mere transmission to oneself of the explicit material "promotes" it under the statute. *See* TEX. PENAL CODE ANN. §§ 21.15(a)(4); 43.21 ("'Promote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.").

occasionally inspected it.  It is not Appellant's intent in searching Candace's phone that is at issue, but rather his intent in sending a copy of the photograph to himself.

Just as the State proposes, the majority's decision rests on Appellant's *conduct* which invaded Candace's privacy, not his *intent* to do so.  While the statute is generally drafted as a "nature of conduct" offense because of its specific prohibitions of the taking or distribution of an explicit photograph, the qualifying clause that it be "with intent to invade the privacy of the other person" is result-oriented.[2]  Thus, Appellant's mere act of transmitting the photograph is not enough—it had to be done with the goal of invading Candace's privacy.  If mere intent to act were sufficient, this statute would follow the same fate as its prior version, which was ruled unconstitutional.  *Ex parte Thompson*, 442 S.W.3d 325, 337–50 (Tex. Crim. App. 2014).  There has to be specific intent to invade privacy, not a general intent to commit the act which results in the invasion of privacy.  Otherwise, a host of innocent actions could become prosecutable offenses under the statute:

- a parent who takes an image of his child while bathing forwards the image to his spouse;

- a father forwards an inappropriate image found on his child's phone to the child's mother;

- a person forwards an explicit image transmitted for harassment to law enforcement; or

- an investigator who is investigating the transmission of such images forwards the image to her work computer to preserve evidence.[3]

---

[2] *See generally Young v. State*, 341 S.W.3d 417, 423–24 (Tex. Crim. App. 2011) (discussing differences between "result of conduct" and "nature of conduct" offenses).

[3] A statute is likely to be found overbroad if the criminal prohibition it creates is of "alarming breadth." *Ex parte Thompson*, 341 S.W.3d at 350.

These are all "intentional intrusions" into the "private affairs" of other people, and yet none would say any of the above acted "with intent to invade the privacy of [another] person." The intent element must be specific intent to "invade the privacy of [another] person" to survive constitutional scrutiny. Because the statute requires specific intent, the cross-examination testimony to rebut the implied "lascivious" intentions of Appellant were relevant.

The only contested issue at trial was the intent of Appellant to "invade the privacy" of Candace. Under the "result of conduct" definition of "intent," the State was required to prove beyond a reasonable doubt Appellant "act[ed] intentionally, or with intent, with respect to [] a result of his conduct when it [was] his conscious objective or desire to [] cause the result." TEX. PENAL CODE ANN. § 6.03(a). The only evidence of Appellant's intent came from Candace's mother:

- when school officials informed the mother of the image found on Candace's email account and she told Appellant about it, he did not immediately tell her he was the person responsible; [4]

- when she told Appellant a week later Candace's school was conducting an investigation into the specific email address the image was sent to, he then confessed he forwarded the image to himself and said he "wasn't thinking" and did not want Candace to "get in trouble"; and

- Appellant never showed the image to Candace's mother, did not inform her of what he found when he forwarded the image to himself, and deleted the image from his own accounts by the time he admitted to her he forwarded the image.

---

[4] It is not apparent from the testimony the initial conversation between Candace's mother and Appellant revealed the email address to which the explicit image was sent. The testimony does show once the email address was revealed, Appellant admitted to Candace's mother he forwarded the image to himself.

However, the cross-examination testimony elicited outside the presence of the jury revealed this was not the whole story:

- two weeks before Appellant discovered the image, Candace was hospitalized for overdosing on a marijuana vape pen at school;

- Candace was suspended from school due to her drug activity;

- Candace, while under the influence, stated she was sexually involved with several males, including one with whom she had an abusive relationship;

- despite her mother forbidding her from having it, Candace downloaded Snapchat to her phone, a messaging app which deletes all messages within twenty-four hours;

- Candace called Appellant "dad" and acknowledged him as her parent, despite not being his biological daughter; and

- Candace claimed she took the explicit selfie to check for "leakage" due to her sexual activity and had an infection which needed to be treated.

These facts temper the very controlled narrative of the State. These additional facts are "of consequence" in determining Appellant's intent, as the jury could have reasonably inferred Appellant forwarded the image to himself because Candace was engaging in dangerous and risky behaviors and was using Snapchat to conceal her conduct.

Even if the evidence is relevant, however, the trial court could still have properly excluded it under Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.[5]  Although the State never made an explicit objection under Rule 403, both the

---

[5] We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ballard v. State*, No. 07-16-00333-CR, 2017 Tex. App.

5

State and the trial court repeated the cross-examination testimony was a form of "victim shaming" and its probative value was outweighed by its prejudice. Under Rule 403, the trial court should weigh the following factors:

(1) the inherent probative force of the proffered evidence along with

(2) the proponent's need for that evidence against

(3) any tendency of the evidence to suggest decision on an improper basis,

(4) any tendency of the evidence to confuse or distract the jury from the main issues,

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(6) the likelihood presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hall v. State*, 663 S.W.3d 15, 32 (Tex. Crim. App. 2021) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

Here, the excluded evidence was probative of Appellant's intent, it was crucial to his defense, and the testimony did not consume an inordinate amount or time or repeat evidence already admitted. Regarding the risk of confusing the jury, suggesting a decision on an improper basis, or undue weight by the jury, these factors were mitigated by the fact Candace did not have a reasonable expectation of privacy. Minors generally do not have the right to privacy in their parents' home, and Candace specifically lacked any such expectation on her phone. *Alameda v. State*, 235 S.W.3d 218, 222 (Tex. Crim. App. 2007).[6] According to Candace, while living with her parents, she was required to

---

LEXIS 11719, at *6 (Tex. App.—Amarillo Dec. 15, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005)).

[6] Because minors lack capacity, their parents are able to give "vicarious consent" for access to what would otherwise be the private domains of adults. *Alameda*, 235 S.W.3d at 222–23; *see also Sorensen v. State*, 478 S.W.2d 532 (Tex. Crim. App. 1972). Under the State's theory, we have the strange

6

give them full, unfettered access to her phone, including providing them the password. The taking of the picture, insofar as her parents were concerned, was done without any expectation of privacy because she lacked a possessory interest in the phone and did not have the right to exclude her parents from the phone.[7]   Without Candace having an expectation of privacy, Appellant was free at all times to examine the contents of Candace's phone and do what was necessary to protect her, including preserving evidence to further investigate her risky behaviors.  The probative value of the evidence of Candace's "personal struggles" regarding Appellant's intent far outweighed any danger of unfair prejudice in a decision by the jury on an improper basis.

Finally, the exclusion of the evidence was harmful because it affected Appellant's substantial rights.  TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).  Again, the only evidence of intent presented by the State was through mother's testimony, stripped of any of Candace's actions which caused concern and

---

result that Appellant, as the parent of Candace, could have given a third party, such as law enforcement, consent to access her phone and the image, but somehow not give himself the same permission.

[7] The following is a non-exhaustive list of factors to determine if someone has a reasonable expectation of privacy:

(1)     whether the person had a property or possessory interest in the place invaded;

(2)     whether she was legitimately in the place invaded;

(3)     whether she had complete dominion or control and the right to exclude others;

(4)     whether, before the intrusion, she took normal precautions customarily taken by those seeking privacy;

(5)     whether she put the place to some private use, and

(6)     whether her claim of privacy was consistent with historical notions of privacy.

*Mohammed v. State*, No. 02-15-00127-CR, 2016 Tex. App. LEXIS 7200, at *14 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op., not designated for publication) (citing *Matthews v. State*, 431 S.W.3d 596, 606–07 (Tex. Crim. App. 2014)); *Long v. State*, 535 S.W.3d 511, 529 (Tex. Crim. App. 2017).

motivated Appellant to go through her phone. The State's presentation of evidence misled the jury to believe Candace was a generally well-behaved teenager who did not warrant her stepfather looking at the contents of her phone, let alone forwarding any of the contents to himself. This was reinforced by the version of Candace the State presented to the jury: a dialysis tech who put herself through school and, at the time of the offense, was a hard-working teenager with a job who only had her phone confiscated from her when she "talked back." Based on this "cleaned up" presentation of evidence, it is understandable the jury found beyond a reasonable doubt Appellant had the intent to invade Candace's privacy. Given this was the only evidence the State presented of intent, the additional testimony from Candace's mother about her activities immediately prior to the alleged offense provides context for Appellant's actions, tends to suggest his intent was not to invade Candace's privacy, and more than slightly weakens the State's case. In light of the entire record, the exclusion of the evidence had "a substantial and injurious effect or influence in determin[ing] the jury's verdict," and requires reversal. *Gonzalez*, 544 S.W.3d at 373 (quoting *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)).

The excluded testimony was relevant, should not have been barred based on unfair prejudice, and its exclusion was harmful to Appellant. Because I would sustain Appellant's issue regarding the exclusion of evidence based on relevance, I respectfully dissent.

Alex Yarbrough
Justice

Do not publish.

8