**Robert SORENSEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44686.**

Court of Criminal Appeals of Texas.

April 12, 1972.

Davis Bragg, Killeen, for appellant.

Stanley Kacir, Dist. Atty., William T. Wilson, Asst. Dist. Atty., Belton, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

The conviction is for the possession of marihuana; the punishment, three years imprisonment.

The appellant entered a plea of not guilty before the court. The sufficiency of the evidence is not challenged. The record reflects that no search warrant was issued. The marihuana admitted into evidence was obtained with the full cooperation of appellant's parents pursuant to a "consent to search" form, signed by both of appellant's parents. Appellant and his parents were present at the time the marihuana was obtained by the officers.

Appellant seeks to raise the issue of the lawfulness of a search and seizure made where consent was given by a third party.[1]

The appellant, twenty years of age at the time the marihuana was seized, contends that he had been emancipated, that he was no longer under his parents' control, and that he had rented the bedroom from his parents, thereby creating a landlord-tenant relationship between himself and his parents. He therefore asserts that they could

1. See, generally, 31 A.L.R.2d 1078; see also Maxwell v. Stephens, 348 F.2d 325 (8th Cir. 1965), cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965); State v. Kinderman, 271 Minn. 405, 136 N.W.2d 577 (1965), cert. denied, Kinderman v. Minnesota, 384 U.S. 909, 86 S.Ct. 1349, 16 L.Ed.2d 361 (1966).

not give consent to the search of the bedroom.

Appellant urges the following evidence supports his contention: he had been away from his home working for approximately three years; he had returned approximately three weeks before his arrest; and he had agreed with his parents that as soon as he became employed he would pay them $10.00 rental per week for the room. Appellant got a job and had started working the day he was arrested. While he had made no payments to his parents, his mother was holding the paycheck that he had received from his employer for the work performed the day he was arrested.

The record shows that on September 21, 1970, appellant's mother entered his room to put two clean shirts in his closet. While hanging the shirts up she noticed an unusual odor. She believed the odor to be that of marihuana, which she had had occasion to smell before. Appellant's mother testified, "I took it upon myself to look and see if I could find it, to see if it was there, and I did find it myself there." She stated that she left it where she had found it, undisturbed, over the weekend, assuming that appellant would tell her about it or dispose of it. Sometime thereafter she decided to talk to the family minister. She took some of the green substance with her in order to be certain it was marihuana. Appellant's mother stated that she then had occasion to go to Killeen Police Department, thinking "under the circumstances that existed this would be my only alternative," whereupon she executed a "consent to search" form for the Sorensen residence. The form was also signed by appellant's father.

Officer Cox, Killeen Police Department, testified that the officers made a cursory search of the rest of the Sorensen's three-bedroom, one-bathroom home, then went to appellant's room, which was not separated from the rest of the house, "because we knew where it was on the inside of the house anyway." The officers found a brown jacket in appellant's closet. In the inside pocket were a plastic bag containing marihuana, a green bottle containing marihuana, a clear bottle containing marihuana seeds, and four hypodermic needles. Appellant, who was present, was then arrested.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."[2] Neither are we inclined to believe that they may be vicariously waived.[3] The "Fourth Amendment protects people—and not simply 'areas' . . ."[4] and its protection "depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion."[5]

Appellant's mother testified that appellant was not treated any differently from any other member of the family, and that the appellant's fifteen-year-old brother had the same rights of control of his room as did appellant. She stated that had appellant failed to pay the rent he would not have been evicted. She testified that on occasion she cleaned the appellant's room and picked up after him, although it was only infrequently. She had never been instructed to stay out of his room and it was customary for her to take the laundry she did for appellant into the room.

While we observe that Fourth Amendment rights are not to depend solely upon "subtle distinctions, developed and refined by the common law in evolving the body of private property law . . .",[6] we do

2. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

3. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

4. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

5. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

6. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

not find that the "area" in which the marihuana was found was reserved to the use of appellant to the exclusion of all others. It is clear that appellant's mother, who had equal, if not superior right to be on the premises, was not restricted in any way from being in this "area." On the contrary, appellant's mother was in both his room and the closet in question with some regularity as a matter of course. Appellant had no "reasonable expectation of privacy" in this particular "area." His mother had a right to be where the marihuana was found, she could consent to a search of that area, and her consent would vitiate the need for any search warrant and would be binding upon anyone having rights in that "area." See Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

We further point out that under the facts presented we find neither an unreasonable search and seizure nor any governmental intrusion. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the accused argued that his wife was without authority to consent to a search of their home. The Supreme Court, in addressing itself to this issue, noted that two plainclothes policemen went to the residence where the accused and his wife lived. After having asked questions regarding the accused's whereabouts on the night of the murder offense in question, the officers inquired as to whether her husband owned any guns. The wife answers, " 'Yes, I will get them in the bedroom.' One of the officers replied, 'We will come with you.' The three went into the bedroom where Mrs. Coolidge took all four guns out of the closet."

The opinion revealed that the accused's wife asked the officers if they wanted the guns. After first declining, the officers decided to take them. The officers also asked the accused's wife what he had been wearing on the night of the offense. "She then produced four pairs of trousers and indicated that her husband had probably worn either of two of them on that eve-

ning . . . the police . . . took the various articles to the police station."

The Supreme Court said:

"Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence. (Citation omitted). The question presented here is whether the conduct of the police officers at the Coolidge house was such as to make her actions their actions for the purposes of the Fourth and Fourteenth Amendments and their attendant exclusionary rules. The test . . . is whether Mrs. Coolidge, in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state when she produced her husband's belongings. (Citations omitted).

" . . . The exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct. They are 'to compel respect for the constitutional guaranty and the only effectively available way—by removing the incentive to disregard it.' Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677. But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. . . . "

Stating, "There is not the slightest implication of an attempt on their part to coerce or dominate her, or, for that matter, to direct her actions by the more subtle techniques of suggestion that are available to officials in circumstances like these" the Court held that the conduct of the police was not a search and seizure. We believe the facts of this case are sufficiently analogous, and in applying the reasoning of *Coolidge*, we conclude that the facts before us present no search and seizure as con-

templated by the United States Constitution.

The judgment is affirmed.

Opinion approved by the Court.