**Efrain ALAMEDA, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0231–06.**

Court of Criminal Appeals of Texas.

June 27, 2007.

---

Dean M. Swanda, Arlington, for Appellant.

C. James Gibson, Asst. Criminal District Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

Appellant was convicted of two counts of aggravated sexual assault of a child under fourteen. The jury assessed punishment at thirty years' confinement for each count, and the trial judge ordered that the sentences be served consecutively. Appellant appealed the stacking order, as well as the trial court's decision to admit an audio tape of his conversations with the victim and a transcription of the audio tape. The court of appeals held that the trial court did not err in stacking Appellant's sentences or in admitting the audio tape and the transcript. *Alameda v. State,* 181 S.W.3d 772 (Tex.App.-Ft. Worth 2005). We agree and affirm the decision of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

While Appellant was going through a divorce, he moved in with the 12–year–old

victim, J.H., and her mother, Deborah, whom Appellant had known for eight or nine years. He lived in an extra bedroom in Deborah's home for close to a year. After Appellant moved out, Deborah became suspicious[1] that Appellant and J.H. were communicating without her knowledge, so she attached to the phone jack in her garage a recording device that would record all incoming and outgoing calls on her home telephone. Over two weeks, Deborah recorded almost twenty hours of conversation between Appellant and J.H., neither of whom knew that they were being recorded. Deborah did not suspect that Appellant and J.H were having a sexual relationship until she heard the recording of their conversations. Deborah took the audiotape to the police, and Appellant was charged with aggravated sexual assault of a child.

Prior to his trial, Appellant filed a motion to suppress the audiotapes. He claimed that it was an offense under Penal Code section[2] 16.02 to intentionally intercept a wire communication without consent, so the audiotape was inadmissible under Code of Criminal Procedure article[3] 38.23. The trial judge found that Deborah could vicariously consent to the recording of J.H.'s phone conversations, so the audiotape was admissible.

After Appellant was convicted, he appealed the trial court's decision to admit the audiotape and a transcript of the recording. He also appealed the trial court's cumulation of the two 30–year sentences imposed by the jury, arguing that the jury should decide whether the sentences were cumulated rather than the trial judge. Because there are no Texas cases on this issue, the court of appeals looked at other state courts, as well as at how federal courts have interpreted the federal wiretap law, which is similar to the Texas law. The court of appeals considered the factors outlined in *Pollock v. Pollock*, 154 F.3d 601 (6th Cir.1998), which held that a parent may give vicarious-consent to record a child's telephone conversations if the parent has a good-faith basis for believing that recording is in the best interest of the child. Although vicarious-consent is not listed as an exception to the Texas wiretap law, the court of appeals held that, in order to protect a child, a parent may record her child's telephone conversations if the recording meets the standards in *Pollock*. *Alameda*, 181 S.W.3d at 778. The court of appeals agreed with the trial court's determination that Deborah had a good-faith, objectively reasonable belief that recording the phone conversations was in the best interest of J.H. and therefore upheld the trial court's denial of Appellant's motion to suppress. *Id.* at 780. Because the court held that the audiotape was properly admitted, and Appellant conceded that the transcript was admissible if the audiotape was admissible, the court of appeals did not address the admissibility of the transcript. *Id.* The court of appeals also rejected Appellant's claim regarding the cumulation of his sentences, stating that it was not improper for the trial judge, rather than the jury, to determine

1. Members of Appellant's family made statements to Deborah which led her to believe that Appellant and J.H. were in frequent contact with each other. Deborah was also aware that Appellant had allowed J.H. to do things that she did not approve of, such as driving even though she was not old enough, and lying about her age in order to join a gym.

2. All future references to sections refer to Texas Penal Code, unless otherwise specified.

3. All future references to articles refer to Texas Code of Criminal Procedure unless otherwise specified.

whether the sentences would be cumulated. *Id.* at 781. Because the cumulating of the sentences does not exceed the statutory maximum for the offense, the court held that the cumulated sentence does not violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Alameda*, 181 S.W.3d at 781.

Appellant filed a petition for discretionary review, asking us to consider whether the court of appeals erred in grafting an exception into the relevant statute in order to conclude that the audiotape was properly admitted. Appellant argues that because the court of appeals improperly held that the audiotape was admissible, the court erred in failing to address the merits of his claim that the transcript of the audiotape was improperly admitted. Finally, Appellant asks us to consider whether the court of appeals erred in holding that the trial court's cumulation of his sentences does not violate *Apprendi*.

## DISCUSSION

### Admissibility of the Audiotape

■ Article 38.23(a) of the Texas Code of Criminal Procedure states, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Therefore, because section 16.02(b)[4] states that a person commits an offense if he intentionally intercepts a wire communication, the audiotapes are inadmissible unless the vicarious-consent given by Deborah meets the consent exception to this statute[5] or the interception was legal for some other reason. Appellant argues that the vicarious-consent exception does not apply to the wiretap laws. He bases this argument on *Duffy v. State*, 33 S.W.3d 17, 25 (Tex.App.-El Paso 2000, no pet.), and *Kent v. State*, 809 S.W.2d 664, 668 (Tex.App.-Amarillo 1991, pet. ref'd), in which both courts stated that section 16.02 must be applied in all circumstances that are not specifically excepted. However, as the court of appeals noted, *Duffy* and *Kent* are distinguishable from Appellant's case because those cases addressed whether one spouse can vicariously consent to the recording of the other spouse's conversation, rather than the issue of whether a parent can vicariously consent to the recording of her child's conversations. *Alameda*, 181 S.W.3d at 775 n. 1. The fact that there is no inter-

4. Texas Penal Code Section 16.02(b) states that a person commits an offense if the person:
    (1) intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication;
    (2) intentionally discloses or endeavors to disclose to another person the contents of a wire, oral, or electronic communication if the person knows or has reason to know the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
    (3) intentionally uses or endeavors to use the contents of a wire, oral, or electronic communication if the person knows or is reckless about whether the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.

5. Under section 16.02(c), it is an affirmative defense to prosecution under Subsection (b) that:
    (4) a person not acting under color of law intercepts a wire, oral, or electronic communication, if:
    (A) the person is a party to the communication; or
    (B) one of the parties to the communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing an unlawful act.

spousal consent exception to the wiretap statute does not preclude us from recognizing a parent-child vicarious-consent exception.

Appellant also cites cases related to a minor child's right to seek an abortion or to purchase contraceptives without parental consent for the proposition that a child has the right to privacy, and this general right to privacy should not be taken from the child unless there is a significant state interest. Appellant further argues that, because the Texas Family Code [6] lists the circumstances under which a parent has the right to consent on behalf of a child and does not mention the right to consent to the recording of a child's conversations, we should assume that the legislature intended that no such right exist.

We disagree. We dealt with both the right to privacy and a mother's ability to consent for her child in *Sorensen v. State,* 478 S.W.2d 532 (Tex.Crim.App.1972). Even though the child in *Sorensen* was not a minor, we held that a child has no reasonable expectation of privacy in his room when the parent routinely enters the room, and that a parent can vicariously consent to a search of her child's room. *Id.* at 534.

Therefore, we reject Appellant's contentions that the vicarious-consent exception unlawfully violates a minor's right to privacy and that a parent has the right to consent only in the circumstances listed in the family code.

Because no Texas cases have addressed a parent's ability to vicariously consent to the recording of a child's telephone conversations, and the federal wiretap statute is substantively the same as the Texas statute, we look to the Sixth Circuit's decision in *Pollock v. Pollock,* 154 F.3d 601 (6th Cir.1998), which is the leading case regarding the vicarious-consent doctrine in the context of the federal wiretap statute.[7] In *Pollock,* the plaintiff was the child's stepmother and the defendant was the child's mother. The stepmother appealed the trial court's determination that the mother had not violated Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2511 when she recorded conversations between her daughter and the plaintiff. In upholding the trial court's decision, the court of appeals looked to federal and state case law in which the vicarious-consent doctrine had been applied to both federal and state wiretap statutes.[8] *Pollock,* 154 F.3d at 608–610.

**6.** Texas Family Code section 151.001 lists the rights and duties of a parent:

(a) A parent of a child has the following rights and duties:

(6) the right to consent to the child's marriage, enlistment in the armed forces of the United States, medical and dental care, and psychiatric, psychological, and surgical treatment;

(7) the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

**7.** 18 U.S.C. § 2511(1)(a) states in relevant part that any person who intentionally intercepts any wire communication shall be punished. The federal analog to the consent exception is in 18 U.S.C. § 2511(2)(d) and states that it is not unlawful for a person not acting

under color of law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act.

**8.** The court referenced *Campbell v. Price,* 2 F.Supp.2d 1186 (E.D.Ark.1998), where the vicarious-consent doctrine was applied to Title III; *Silas v. Silas,* 680 So.2d 368 (Ala.Civ. App.1996) and *State v. Diaz,* 308 N.J.Super. 504, 706 A.2d 264 (N.J.Super.A.D.1998), which applied the vicarious-consent doctrine to the respective state's wiretap statutes; and *Williams v. Williams,* 229 Mich.App. 318, 581 N.W.2d 777, 1998 WL 180849 (Mich.Ct.App. 1998) and *West Virginia Dep't of Health & Human Resources v. David L.,* 192 W.Va. 663,

The court adopted the rule set out in *Thompson v. Dulaney*, 838 F.Supp. 1535, 1544 (D.Utah 1993), and held that:

> as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording.

*Pollock* 154 F.3d at 608–610. Unlike adults, minors do not have the legal ability to consent in most situations. As the *Thompson* court noted, the vicarious-consent doctrine was necessary because children lack both "the capacity to consent and the ability to give actual consent." 838 F.Supp. at 1543.

Appellant argues that, in this case, J.H. did have the ability to consent because she was thirteen years old at the time the conversations were recorded, whereas the children in *Thompson* were only three and five years old. However, the vicarious-consent doctrine has also been applied to older children, including a fourteen-year-old in *Pollock*. A minor's actual ability to consent does not preclude her mother's ability to vicariously consent on her behalf. Thus the standard set out in Pollock is that vicarious-consent is acceptable if the parent had an objectively reasonable, good-faith belief that consenting for the child was in the child's best interest.

We agree with the court of appeals that Deborah had an objectively reasonable, good-faith basis for believing that recording the conversations was in J.H.'s best interest. Because the recording of the conversations meets the standards set out in *Pollock*, the vicarious-consent given by

453 S.E.2d 646 (W.Va.1994), which addressed the vicarious-consent doctrine under

Deborah satisfies the exception to the Texas wiretap statute. And, since it is not a violation of Penal Code section 16.02 to intentionally intercept an oral communication if one party consented, no law was broken, and article 38.23 does not render the evidence inadmissible.

Appellant states that this case may illustrate why a vicarious-consent exception should be added to the statute, but he argues that it should be added by the legislature and not the courts. However, by holding that a parent can give vicarious-consent for a child, we are not adding a new exception to the wiretap statute. Rather, we are saying that vicarious-consent, which is a type of consent recognized in many contexts in the law regarding the parent-child relationship, also applies to the existing consent exception to the wiretap statute.

## Admissibility of the Transcript

Appellant concedes that if the audiotape were admissible, his complaint regarding the admissibility of the transcript of the recorded conversations would be moot. Therefore, because the audiotape was properly admitted, the transcript was also admissible, and we do not need to address Appellant's second ground for review. The court of appeals did not err in failing to consider the merits of this claim.

## Cumulation of Sentences

Appellant argues that the trial judge erred in cumulating the two sentences imposed by the jury. He claims that this cumulation order was improper because 1) it violated *Apprendi* by assessing a punishment greater than what was authorized by the jury who determined the sentence, and 2) the jury, rather than the

both federal and state wiretap statutes.

judge, should determine whether sentences should be cumulated. We dealt with each of these issues in *Barrow v. State*, 207 S.W.3d 377 (Tex.Crim.App. 2006), holding that it was within the trial court's discretion to cumulate the sentences, and that the cumulated sentence did not violate *Apprendi.* As we stated in *Barrow*, the *Apprendi* line of cases does not apply to a trial court's decision to cumulate jury-imposed sentences. *Barrow*, 207 S.W.3d at 379. While the opinion of the court of appeals inaccurately implies that *Apprendi* is violated only when the sentence exceeds the statutory maximum for the offense, the court was correct that the sentence in this case did not violate *Apprendi* and its progeny.[9] *Alameda*, 181 S.W.3d at 781.

■ In *Barrow*, we also determined that the decision to cumulate sentences does not turn on a finding of fact, so even if the jury assessed the sentences, a trial judge may order that the sentences run consecutively. *Barrow*, 207 S.W.3d at 380. Although the court of appeals did not have the benefit of our decision in *Barrow* at the time of its decision, the court properly held that the trial court did not err in cumulating the sentences imposed by the jury.

## CONCLUSION

We hold that the doctrine of vicarious-consent applies to the consent exception of the wiretapping statute. Because the victim's mother provided the consent necessary for the affirmative defense to the statute prohibiting wire tapping, it was not a violation of Penal Code section 16.02 to record the conversations. Therefore, the audiotape was legally obtained and was not rendered inadmissible by article 38.23.

Since the audiotape was properly admitted, the admissibility of the transcript of the recorded conversations is not at issue, and the court of appeals did not err in failing to consider the merits of this claim. Although the jury imposed the two 30–year sentences, it was within the trial judge's discretion to decide whether to order that the sentences be served consecutively. The court of appeals properly rejected Appellant's arguments regarding the cumulation of his sentences and upheld the trial court's cumulation order. The decision of the court of appeals is affirmed.

KELLER, P.J., filed a concurring opinion, in which KEASLER and HERVEY, JJ., joined. WOMACK, J., joined in part and filed a concurring opinion.

HOLCOMB, J., filed a dissenting opinion.

KELLER, P.J., concurring in which KEASLER, and HERVEY, JJ., joined.

Three salient facts bear on the admissibility of the tape recording in this case: (1) one of the parties to the recorded conversations was the minor child of a parent conducting the recording, (2) the recording was conducted by the parent as part of caring for the child's welfare, and (3) the recording occurred through a telephone jack located in the parent's home. Because of these three facts, I would hold that the recording did not constitute "interception" under the Texas wiretap statute.

For a crime to occur under the wiretap statute, there must be an *interception* or an intended interception of a wire, oral or

---

**9.** The *Apprendi* line of cases determined that, when a defendant elects to have a jury assess punishment, any finding of fact that increases the maximum punishment that can be assessed must be made by the jury.

electronic communication.[1] The statute provides that "intercept" has the same meaning as defined under Article 18.20 of the Code of Criminal Procedure, governing law-enforcement-related wiretaps.[2] Under Article 18.20, "intercept" means "the aural or other acquisition of the contents of a wire, oral, or electronic communication through the use of an electronic, mechanical, or other device."[3] This definition in turn relies upon the definition of "electronic, mechanical, or other device," which explicitly excludes certain types of instruments or equipment.[4] Among other things, the wiretap statute excludes from its reach "a telephone or telegraph instrument, [or] equipment ... used for the transmission of electronic communications, ... if the ... instrument [or] equipment ... is ... furnished to the subscriber or user by a provider of wire or electronic communications service in the ordinary course of the provider's business and *being used by the subscriber or user in the ordinary course of its business.*"[5]

All of this language is virtually identical to language in the federal wiretap statute. In reviewing the legislative history of the federal counterpart to this provision (what has become known as the "extension phone" exception), the Second Circuit ex-plained that the exception originally contained no "ordinary course of business" limitation.[6] This limitation was added after Professor Herman Schwartz, testifying on behalf of the A.C.L.U., complained that the unqualified language would allow policemen and private intruders to enter others' homes and listen in on extension phones without penalty.[7] But, declining to recommend that the entire exception be deleted, Professor Schwartz commented, "I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem."[8]

Several federal appeals courts have applied the extension phone exception to in-home recording by a parent of a minor child's conversations because the recording was done within the ordinary course of the parent's business of caring for the child.[9] The Supreme Court of New Hampshire followed suit in interpreting the same language in its own wiretap statute.[10] I would follow these cases and hold that a parent's recording of a minor child's conversations from a telephone jack within the home for the purpose of caring for the child constitutes a use that is exempt from the wiretap statute.

With these comments, I join the opinion of the Court.

---

1. Tex. Pen.Code § 16.02(b).

2. § 16.02(a).

3. Tex.Code Crim. Proc. Art. 18.20, § 1(3).

4. Art. 18.20, § 1(4).

5. Art. 18.20, § 1(4)(A)(emphasis added).

6. *Anonymous v. Anonymous*, 558 F.2d 677, 679 (2nd Cir.1977).

7. *Id.*

8. *Id.* (quoting Hearings on the Anti–Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong., 1st Sess. 901 (1967)).

9. *Scheib v. Grant*, 22 F.3d 149, 153–55 (7th Cir.1994); *Newcomb v. Ingle*, 944 F.2d 1534, 1536 (10th Cir.1991); *Janecka v. Franklin*, 843 F.2d 110, 111 (2nd Cir.1988), *affirming and approving district court opinion at* 684 F.Supp. 24 (S.D.N.Y.1987); *Anonymous*, 558 F.2d at 679. *But see Pollock v. Pollock*, 154 F.3d 601 (6th Cir.1998)(declining to follow these cases but citing them as some support for its holding exempting parental recording of a minor child's conversations under the "consent" exception to the wiretap statute).

10. *State v. Telles* 139 N.H. 344, 346–47, 653 A.2d 554, 556–57 (1995).

WOMACK, J., concurring.

I join the judgment of the Court and the portions of its opinion that are headed "Admissibility of the Transcript" and "Cumulation of Sentences."

For the reasons given in the Presiding Judge's opinion, *ante,* I agree that the tape recording was admissible.

HOLCOMB, J., dissenting.

I respectfully dissent from the majority's holding that it was within the trial judge's discretion to order cumulation of the two 30–year sentences determined by the jury in this case.

In making this determination, the majority relies on our recent decision in *Barrow v. State,* 207 S.W.3d 377 (Tex.Crim. App.2006), and goes so far as to hold that "the [*Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] line of cases does not [even] apply to a trial court's decision to cumulate jury-imposed sentences." I respectfully disagree. Indeed, for the reasons discussed below, I believe that *Barrow* itself might have been wrongly decided.[1]

### *Applicability of the* Apprendi *line of cases*

In *Barrow,* this Court stated that

these cases [*Apprendi* and its progeny] hold that a trial court is prohibited from unilaterally increasing *individual* sentences on the basis of facts that were not resolved by the jury. Thus, *Apprendi*

and its progeny clearly deal with the upper-end extension of individual sentences, when that extension is contingent upon findings of fact that were never submitted to the jury. These decisions do not, however, speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary.

*Barrow,* 207 S.W.3d at 379 (emphasis in original).

In other words, *Barrow* dictates that the *Apprendi* line of decisions is applicable only in cases where a trial court has (1) unilaterally increased (2) individual sentences (3) on the basis of facts that were not resolved by the jury; but that it is not applicable in cases where the trial court's authority to cumulate sentences (1) is provided by a statute, (2) is not based upon discrete fact-finding, but (3) is "wholly discretionary." I respectfully disagree with such a narrow reading of *Apprendi* and its progeny.

It is true that in the *Apprendi* line of cases, the trial court *had* unilaterally increased individual sentences on the basis of facts not found by the jury. *See e.g., Apprendi, supra* (trial court imposed enhanced sentence on its separate finding that the crime had been motivated by racial bias); *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (trial court entered "Special Verdict," increasing Ring's sentence from life to death, based on its separate finding of

1. In the interest of full disclosure, I admit that I had joined the majority in *Barrow.* But like Justice Scalia, who declared that he had "acquired new wisdom" since his prior inconsistent position in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) on this same issue of cumulating sentences, *Ring v. Arizona,* 536 U.S. 584, 611, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I too acknowledge that I have gained new insight since

*Barrow;* and like Justice Scalia, I too was persuaded to reconsider my position because of the greater clarity with which the issue has been presented in this case. *See Ring,* 536 U.S. at 611, 122 S.Ct. 2428 ("In *Walton,* to tell the truth, the Sixth Amendment claim was not put with the clarity it obtained in [*Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)] and *Apprendi.*").

aggravating factors justifying the imposition of death under the Arizona statute); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (trial court imposed an "exceptional" sentence after making a judicial determination that the defendant had acted with "deliberate cruelty"); and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (trial court required by the Federal Sentencing Guidelines to impose an enhanced sentence based on judicial determination of facts not submitted to the jury). However, the United States Supreme Court did not restrict its decision to these particular circumstances. As that Court clearly articulated, "the relevant inquiry is one not of form, but of *effect*— does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi,* 530 U.S. at 494 (emphasis added). *See also Ring,* 536 U.S. at 604, 122 S.Ct. 2428 ("the relevant inquiry is one not of form, but of *effect* ") (emphasis added).

The use of the words "required finding" in *Apprendi* might tempt the majority in the present case to reiterate the aforementioned *Barrow* holding that the *Apprendi* line of cases only "deal[s] with the upper-end extension of individual sentences, when that extension is contingent upon *findings of fact* that were never submitted to the jury," but that "[t]hese decisions do not . . . speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary." *Barrow,* 207 S.W.3d at 379. But in so doing, the majority in this case would be emphasizing "form" over "effect," the very practice that the *Apprendi* line of cases discouraged, as shown in the above-

cited quote. Moreover, the prohibited "effect" is quite clear in both *Barrow* and the present case. Thus, in *Barrow,* the jury had assessed the defendant's punishment at 15 years' imprisonment for count one and 20 years' imprisonment for count two. Since under the prevailing statute, Article 42.08 of the Texas Code of Criminal Procedure,[2] the jury is not required to indicate whether it expected those sentences to run concurrently or consecutively, there is no way to know whether it intended the defendant to spend a total of 20 years (if the sentences ran concurrently) or 35 years (if the sentences ran consecutively) in prison. Thus, if the jury had in fact determined that the appropriate punishment for Barrow was a total of 20 years' imprisonment, the judge's decision to cumulate the two sentences, resulting in a total of 35 years' imprisonment, in "effect" increased the jury-assessed sentence by fifteen years. And the fact that the judge based this decision without any additional fact-finding, or any input from the jury on this question, makes such just the kind of arbitrary decision-making that *Apprendi* and its progeny condemned. *See, e.g., Booker,* 543 U.S. at 238–39, 125 S.Ct. 738 ("The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from '*arbitrary* punishments upon *arbitrary* convictions' *without* the benefit of a jury in criminal cases.") (emphasis added).

Similarly, in the present case, the jury assessed punishment at 30 years for each of the two counts on which appellant was convicted; and, without any additional fact-finding nor input from the jury, the trial court cumulated that punishment to 60 years. Thus, again, if the jury, in assessing punishment, had in fact intended

---

**2.** All future references to articles refer to the Texas Code of Criminal Procedure, unless

otherwise specified.

those sentences to run concurrently, the trial court in "effect" doubled the intended punishment, simply and solely because it was empowered to do so under Article 42.08.[3] In other words, the judge's decision to cumulate, which *Barrow* called "wholly discretionary,"[4] is in fact wholly arbitrary, violating the constitutional mandate of *Apprendi* and its progeny, as well as all the sources cited therein.

Finally, the fact that the "trial court's authority to cumulate sentences ... is provided by statute"[5] is of no constitutional significance, considering the United States Supreme Court did not hesitate to invalidate statutes providing similar authority to trial courts, in the *Apprendi* line of cases. *See, e.g., Apprendi*, 530 U.S. at 497, 120 S.Ct. 2348 ("The New Jersey ['hate crime' statute] challenged in this case is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system"); *Ring, supra*, (invalidating the Arizona statutory scheme allowing the judge to sentence the defendant to death, upon the judge's independent determination of one or more aggravating factors enumerated in the statute); *Blakely, supra* (invalidating the Washington statute that authorized the trial court to impose an "exceptional" sentence, after making a judicial determination that the defendant had acted with "deliberate cruelty").

### The Jury Assessment of Punishment

As this Court stated in *Barrow*:

It is well established that the constitutional right to a jury trial does not encompass the right to have the jury assess punishment. Texas is one of the few states that allow defendants the privilege, by statute, of opting for jury assessment of punishment. Even so, it is left to the trial court to determine whether multiple sentences will run consecutively or concurrently. As the court of appeals pointed out, the Texas Legislature has assigned the decision to cumulate, *vel non*, in *Section 3.03 of the Penal Code* and *Article 42.08 of the Code of Criminal Procedure*, to the trial court. It is also clear from these provisions that the decision whether to cumulate does not turn on any discrete or particular findings of fact on the judge's part. Instead, cumulating is purely a normative decision, much like the decision of what particular sentence to impose within the range of punishment authorized by the jury's verdict. As such, it does not infringe upon the Sixth Amendment guarantee of a jury trial.

*Barrow*, 207 S.W.3d at 380.

I do not dispute whether "[i]t is well established that the constitutional right to a jury trial does not encompass the right to have the jury assess punishment." *Id.* It should be noted, however, that *Barrow* cited no authority to support its proposition that Texas allows defendants only a privilege, not a right, to opt for jury assessment of punishment. On the contrary, in the section just preceding the one cited by *Barrow* to show that "Texas is one of the few states that allow defendants" to

---

**3.** *See, e.g., Apprendi*, 530 U.S. at 495, 120 S.Ct. 2348 ("But it can hardly be said that the *potential doubling* of one's sentence—from 10 years to 20—has no more than a nominal effect. Both in terms of absolute years behind bars, and because of the more severe stigma attached, the differential here is unquestionably of constitutional significance.") (emphasis added).

**4.** 207 S.W.3d at 379 ("[t]hese decisions do not ... speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary.").

**5.** *Id.*

opt for jury-assessed punishment, *id.* at 380 (citing 43 G. Dix & R. Dawson, *Texas Practice: Criminal Practice and Procedure* § 38.12 at 656 (2d ed.2001)), clearly states that Texas in fact provides the defendant with a right, not just a privilege, to such option. *See* 43 G. Dix & R. Dawson, *supra,* § 38.11 at 656 ("Texas law provides the defendant with a *right* to jury sentencing. The *right* is purely statutory.")(emphasis added). Having made the decision to vest the defendant with such a right, Texas should have also ensured that the right would be absolute. Yet, by simultaneously vesting the trial judge with the authority to decide whether to cumulate the jury-assessed sentences, without any input from the jury on this critical decision, thwarts its own laudable objective. In other words, Texas giveth, but then Texas taketh away. The result is not only unconscionable but in fact unconstitutional, as illustrated by *Barrow* and the case before us now.

As we discussed in the previous section, the jury assessed Barrow's punishment at 15 and 20 years' imprisonment. It was the trial court's decision to cumulate those sentences, turning it into one long sentence of 35 years' imprisonment. Even though Texas law might have authorized the judge to do so, the practical "effect" (as emphasized by the *Apprendi* line of cases) is that the judge might well have increased Barrow's punishment by 15 years, if the jury had determined those two sentences with the expectation that they would be ordered to run only concurrently. Indeed, the jury might well have assessed Barrow's punishment at only 12 years' imprisonment, on each of the two counts, had they known that the judge

would cumulate the two sentences. But the practical "effect," once again, is that Texas law—in spite of its claims to the contrary—gives the jury only a minor role in assessing punishment, while reserving the right for the judge to double that assessment, for any or no reason whatsoever. The constitutional danger of such unchecked discretion is clear when one stops to consider that, under the present statutory scheme, it would be perfectly legal for a judge to order two 30–year sentences to run consecutively if the defendant were black, but only concurrently if the defendant were white, without needing to even explain his reasons for the disparate decisions. Such is precisely the kind of "discretion" prohibited by *Apprendi* and its progeny.[6]

### The Texas Law

As cited in the previous section, the *Barrow* Court stated that

> the Texas Legislature has assigned the decision to cumulate, *vel non,* in *Section 3.03 of the Penal Code* and *Article 42.08 of the Code of Criminal Procedure,* to the trial court. It is also clear from these provisions that the decision whether to cumulate does not turn on any discrete or particular findings of fact on the judge's part. Instead, cumulating is purely a normative decision, much like the decision of what particular sentence to impose within the range of punishment authorized by the jury's verdict. As such, it does not infringe upon the Sixth Amendment guarantee of a jury trial.

*Barrow,* 207 S.W.3d at 380.

As we discussed in the previous section, however, Texas law vests the criminal de-

---

6. *See, e.g., Booker,* 543 U.S. at 238–39, 125 S.Ct. 738 ("The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from '*arbitrary* punishments upon *arbitrary* convictions' without the benefit of a jury in criminal cases.") (emphasis added).

fendants with a right, not merely a privilege, to have the jury assess their punishment.[7] The decision whether or not to cumulate a defendant's sentences has a significant bearing on that right, inasmuch as the cumulation can potentially double the punishment assessed by the jury. The fact that a statutory provision would allow a judge to order such a potentially substantial increase in the jury-assessed punishment, without even requiring the judge to make any fact-finding and thus at least objectively justify the increase, encourages precisely the kind of arbitrary decision-making that the *Apprendi* line of cases prohibited.

Moreover, it is not even clear whether the statutory law actually vests the trial judge with such absolute discretion. The Texas Penal Code § 3.03 states:

§ 3.03. Sentences for Offenses Arising Out of Same Criminal Episode

(a) When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.

(b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences *may* run concurrently or consecutively if each sentence is for a conviction of:

[certain enumerated offenses, including § 22.021, Aggravated Sexual Assault, at issue in both *Barrow* and the present case].

(Emphasis added.)

Thus, as the dissent in *Barrow* itself correctly pointed out:

Unlike *Article 42.08 of the Code of Criminal Procedure,* the language of *3.03(b)*

does not explicitly vest the trial court with the right to decide whether sentences will run consecutively or concurrently. Rather, *Section 3.03* provides that when an accused is found guilty of more than one offense arising out of the same criminal episode, and the offenses are violations of *Section 22.011 of the Penal Code* committed against a victim younger than 17 years old, the sentences *may* run consecutively or concurrently. The statute does not address who makes the decision, or if the grant of discretion to the trial judge is proper if the jury is the finder of fact at punishment.

*Id.* at 382 (Meyers, J., dissenting) (emphasis in original).

As the dissent further clarified:

*Article 42.08* applies in two types of situations: those in which the defendant is being tried for several crimes in one trial; and those in which the defendant is convicted a second time while still serving his sentence from a previous conviction. When the convictions result from separate trials, it makes sense for the judge to determine whether or not to cumulate the sentences. In those situations, only the judge has access to all the facts relevant to the cumulation decision, because neither jury was the fact-finder for both cases. However, when the two cases are tried together, [as in *Barrow* and the present case,] if the defendant has elected jury punishment, the jury does have all the facts relevant to sentencing and should be permitted to determine the cumulation issue, just as they decide all other punishment issues.

*Id.* at 382–83.

With all due respect, I find the *Barrow* dissent's reasoning to be far more persuasive than that of its majority.

---

**7.** *See* 43 G. Dix & R. Dawson, *supra,* § 38.11 at 656 ("Texas law provides the defendant with a *right* to jury sentencing. The *right* is purely statutory.")(emphasis added).

*Conclusion*

For all the above reasons, I believe that the majority's reliance on *Barrow* to dispose of the present case is sadly misplaced. *Barrow* should be overruled, not followed. Since Texas has given criminal defendants the right to opt for jury-assessed punishment, it should make that allowance wholeheartedly, without in any way diluting that right by simultaneously giving the trial judge the absolute and unchecked discretion to double, and possibly even triple, the punishment that the jury might have actually intended. Since the majority's construction of the Texas statutory scheme would authorize such an arbitrary result, thus violating both the United States Constitution, under *Apprendi* and its progeny, and the statutory right of the defendant to have jury assess punishment, under the applicable Texas law, I respectfully dissent.