

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00400-CR

JIMMY NOEL HUGHES                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jimmy Noel Hughes appeals his conviction for two counts of aggravated sexual assault of a child. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## I. Background Facts

On August 22, 2008, "Jane,"[2] then sixteen years old, and her fifteen-year-old friend "Tammy" were spending the evening at the home of their friends, Derick Chambers and Joseph Kincaid. Jane had been over to Chambers and Kincaid's house on about ten previous occasions. Appellant, whom Chambers and Kincaid had known for only a few weeks, was also at the house. Appellant, Chambers, and Kincaid were all about nineteen or twenty years old. Jane testified that she had met Appellant about two weeks prior and that she had ridden in his car "a couple of times before."

At Chambers and Kincaid's house, Jane, Tammy, and the men all began drinking beer around six or seven o'clock in the evening. Jane testified that she consumed about five beers over the course of the night. Appellant testified that they were also consuming Jagermeister and drugs, including hydrocodone, Xanax, and marijuana.

Jane spent most of the night hanging out in the living room with Tammy, Chambers, and Kincaid. Appellant stayed outside to work on his stereo. Jane occasionally went outside and spoke with Appellant while he worked.

Around midnight, Chambers and Kincaid went to their bedrooms. Tammy and Jane went to sleep sometime after that. When Jane had spent the night before, she had slept in the living room. But because she thought Appellant

[2]We use pseudonyms to protect the complainant's identity and that of the other minor.

would be sleeping there, she went to sleep in Kincaid's bed. Tammy went to sleep in Chambers's bedroom. Jane, Chambers, and Kincaid all testified that none of the men were, or had ever been, in a sexual or romantic relationship with the girls.

A few hours after falling asleep, Jane woke up to her head hurting. She went to the bathroom and discovered that the back of her head was "pouring out blood." She woke everyone else up and asked to be taken to the hospital. She used Chambers's cell phone to call her parents to tell them what had happened. Jane told her parents that she was in Henrietta because she did not want them to know where she had been staying. Appellant offered to drive her home because Chambers and Kincaid had to be at work. Jane used Chambers's phone again to tell her parents she had gotten a ride. No one else at the house recalled seeing any other injuries to Jane before she left.

On the way to Jane's house, Appellant turned off the main road onto a gravel road. She claimed that Appellant said he had gone the wrong way and would have to turn around. According to Jane, he then stopped the car and hit her "in the back of [her] head where it was cut open and then hit [her] in [her] nose and then in [her] mouth a couple of times," breaking her nose and chipping her teeth. He told her to get out of the car and take off her clothes. Jane claimed that he sexually assaulted her first by forcing her to perform oral sex on him and then by penetrating her vaginally with his sexual organ. Jane did not testify that Appellant penetrated her anally.

After he finished, Appellant allowed Jane to get dressed and back in the car. She testified that he then said "you know what I gotta do now," which she took to mean that he planned to kill her. Jane promised not to tell anyone about what happened. Jane testified that she felt he would "look for [her]" if she told anyone. Appellant continued driving Jane home. When Appellant got near Jane's house, Jane got out of the car and "took off running." She ran home to her parents and told them she had just been raped.

Jane's parents called 911, and Jane was taken to the hospital where Sexual Assault Nurse Examiner Erin Wilson performed a sexual assault examination. Nurse Wilson noted a head wound; bruises on Jane's thighs, wrists, and arms; a broken nose; chipped teeth; anal dilation; and redness around Jane's anus. She also noted that Jane was "very drowsy." Swabs from Jane's rape kit tested positive for seminal fluid in both her vagina and anus. DNA tests later matched the samples to Appellant.

Police officers went to the hotel where Appellant was staying and found his car in the parking lot. Officers saw blood drops on the inside of the passenger door, which two officers testified revealed a spatter pattern consistent with someone being punched. Officers also took Jane to the location of the incident and found blood on rocks and an oil stain.[3] A sample of the bloody rocks tested positive for human blood.

---

[3]Appellant's car leaked oil because of a cracked engine head.

At trial, Appellant denied Jane's description of the evening. He testified that after everyone else went to sleep, he and Jane kissed on the couch and performed oral sex on each other in the living room. They attempted vaginal intercourse, but Appellant could not maintain an erection. They then got dressed and went into Kincaid's bedroom to find marijuana. Appellant claims he told Jane he was not interested in a relationship with her and she got angry. He testified that she gouged him in the eye and that, in defending himself, he swung at her "two or three times," hitting her in the nose and mouth.

On the way to take Jane home, Appellant claims that he missed a turn and swerved, causing Jane to bang her head on the door. She became nauseated, he pulled over so that she could get some fresh air, and she laid on the ground to rest. After a few minutes, she got back into the car and they proceeded to her home.[4]

Appellant was charged with two counts of aggravated sexual assault of a child. A jury found Appellant guilty of both charges and assessed a sentence of ninety-nine years' imprisonment on each count. The trial court ordered that the

---

[4]The testimony of Appellant at trial concerning his sexual encounter with Jane on August 22, 2008, was one of four different versions told by Appellant at different times. In his first statement, Appellant denied ever having sex with Jane. In his second version, he acknowledged having sex with her, just not on that date. After being confronted with the DNA results, Appellant changed his account to admitting he had vaginal intercourse with Jane on the side of the road on the night alleged, yet still denying anal intercourse.

sentences be cumulated, that is, that they run consecutively. This appeal followed.

## II. Discussion

### A. Sufficiency of the Evidence

In his first two issues, Appellant argues that the evidence is insufficient to support his conviction. Specifically, he argues that the evidence is insufficient to support the jury's findings that he threatened to kill Jane and that he penetrated Jane's anus with his sexual organ.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the

6

factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means and if he, by acts or words, threatens to cause the death, serious bodily injury, or kidnapping of any person. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(A)(iii) (West 2011). Appellant does not now contest any finding that he penetrated Jane's sexual organ when she was under the age of seventeen; he argues only that the evidence does not support a finding that he threatened to cause her death or that he penetrated her anus.

### 1. Threat to Kill

The crux of Appellant's argument that there was insufficient evidence of any threat he made to kill Jane appears to be that Jane's testimony was "inconsistent and implausible." He points to the fact that Jane socialized with "twenty-something male friends" and was a runaway. He claims that her testimony of how she got her injuries is not credible, that he presented "the only plausible explanation for [Jane's] head wound," and that his explanation of her

7

broken nose "is also more plausible than that of the girl." However, as noted above, it is not our task here to re-evaluate the weight and credibility of the evidence. *See Williams*, 235 S.W.3d at 750; *see also Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) (noting that appellant's argument that the victims' testimony was not sufficiently credible was not a complaint of the sufficiency of the evidence). Appellant attacks the credibility of the evidence, not its sufficiency. The jury determines the credibility of the evidence, not the appellate court. *See Williams*, 235 S.W.3d at 750. After hearing all of the evidence, the jury found Jane's testimony credible, and we must accept that finding.[5] *See id.*

Jane testified that after she was raped "[h]e said, you know what I gotta do now. Right? And he was ta[l]king about killing me. And I promised him that I wouldn't say anything to anyone, and I was telling him it's not his fault and asked him to take me to my house." Jane's father said that when Jane came home that morning, she had "terror in her eyes" and was "[s]cared to death." The nurse examiner testified that when she examined Jane, Jane reported, "Back in the car he said I knew what he had to do like he had to kill me, but I told him I wouldn't tell anyone."

---

[5]The jury also heard testimony that Appellant had previously been convicted of felony theft and that four days before the trial began, he escaped from the Wichita County Jail Annex. The jury was free to take this evidence into consideration in determining Appellant's credibility.

8

Appellant argues that Jane did not tell the nurse examiner that Appellant had "actually" threatened to kill her, only that she perceived his statement to mean that he intended to kill her. But the penal code does not require the defendant to specifically use the word "kill" in order for the statement to be considered a threat. *See* Tex. Penal Code Ann. § 22.021(a)(2)(A)(iii) (stating that a person may threaten to cause the death, serious bodily injury, or kidnapping of any person "by acts or words"); *Dalton v. State*, 898 S.W.2d 424, 429 (Tex. App.—Fort Worth 1995, pet. ref'd) ("For obvious reasons, we decline to hold that certain 'acts or words' are mutually exclusive to proving different manners and means of committing a particular offense."). "To determine the presence of the aggravating nature of an offense, a trier of fact is entitled to consider not only the injuries actually inflicted and the express verbal threats made by a defendant, but also his objective conduct, i.e.*,* his acts, words, or deeds." *Dalton*, 898 S.W.2d at 429. Thus, the jury could have considered Jane's testimony that Appellant had punched her so hard in the face that it broke her nose and chipped her teeth and that he told her that she knew "what he was going to have to do" and reasonably concluded that Appellant had threatened Jane with death. *See Mata v. State*, 952 S.W.2d 30, 32 (Tex. App.—San Antonio 1997, no pet.) (holding the evidence sufficient to support the element of threat to kill or seriously injure in an aggravated sexual assault case where victim was physically injured, restrained, and gagged but was not verbally threatened); *Dalton*, 898 S.W.2d at 430 (noting that use of force can constitute a threat

9

regardless of whether the defendant threatens to "kill" the victim). As stated above, the jury assessed the competing stories of the witnesses and found Jane's testimony to be credible. Based on our review of the evidence, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant threatened to kill Jane. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (noting that a child victim's testimony is sufficient to support a conviction for sexual assault); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd) (same). We overrule Appellant's first issue.

### 2. Anal Penetration

To support his contention that the evidence does not support a finding that he anally penetrated Jane, Appellant points to Jane's testimony that she did not remember being penetrated from behind and that she did not remember being penetrated anally. However, the DNA test results showed that Appellant's DNA was found on the swab of Jane's anus. The analyst from the Tarrant County Medical Examiner's Office testified that the probability that the DNA found on the anal swab belonged to someone other than Appellant was about one in 1.1 quintillion (1,100,000,000,000,000,000). Further, Nurse Wilson testified that Jane exhibited redness to part of her anus and noted a "very relaxed sphincter tone." Nurse Wilson's testimony established that her exam required her to "swab pretty deep inside" Jane's anus to obtain the sample collected. Nurse Wilson further testified that a "relaxed sphincter tone," also known as "anal dilation," and

10

the procedure used to collect the positive DNA sample are consistent with anal penetration.

The State's medical expert, Dr. Leo Mercer, testified that it is possible that because of her injuries, Jane could have "shut down" and might not have been aware of everything that was being done to her. Dr. Mercer explained that it was "quite common" for a victim to be in such pain that they "may be distracted from recognizing other sources of discomfort."[6] He also testified that DNA evidence from an anal swab is consistent with anal penetration.

Police interviewed Appellant three times. In the first two interviews, Appellant denied having any sexual relations with Jane on the night of August 22, 2008. In the third pretrial interview, Clay County Sherriff Kenny Lemons confronted Appellant with the DNA test results, and Appellant claimed that he had had consensual intercourse with Jane on the side of the road and that he had accidentally contacted her anus when trying to penetrate her vagina. At trial, Appellant stated that they had consensual sex at the house and that "when [he] was trying to put it inside of her that [he was] pretty sure it did come into contact with her anus."

---

[6]Jane testified that during the actual sexual acts, she was in pain in both her head and face. Her testimony was not that anal penetration did not occur, but only that she did not remember it. She did not remember other significant details as well, such as whether Appellant ejaculated. Yet, the DNA evidence establishes that he clearly did.

11

After viewing all of the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant penetrated Jane's anus with his sexual organ. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Appellant's conviction, and we overrule his second point.

## B. Cumulation of Sentences

Appellant's remaining four issues concern the trial court's cumulation of Appellant's two ninety-nine year sentences. The State argues that Appellant has not preserved his complaints for our review because he did not object at trial. Generally, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).

In his third issue, Appellant argues that cumulation of the sentences improperly increased his punishment beyond the statutory maximum in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). Appellant did not make an *Apprendi* objection at trial and thus waived his complaint. *See White v. State*, No. 02-02-00143-CR, 2003 WL 865351, at *2–3 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived his *Apprendi* complaint by not objecting on those grounds

12

at trial); *see also Lacy v. State*, Nos. 14-05-00775-CR, 14-05-00776-CR, 14-05-00777-CR, 14-05-00778-CR, 2006 WL 2862156, at *2 n.1 (mem. op., not designated for publication) (Tex. App.—Houston [14th Dist.] Oct. 10, 2006, no pet.) (noting the split in the intermediate courts as to whether a defendant waives an *Apprendi* complaint by failing to object in the trial court).[7]  We overrule Appellant's third issue.

Appellant's fifth and sixth issues challenge the constitutionality of section 3.03 of the penal code and article 42.08 of the code of criminal procedure.  *See* Tex. Penal Code Ann. § 3.03 (West 2011); Tex. Code Crim. Proc. Ann. art. 42.08 (West 2006).  Specifically, in his fifth issue, Appellant argues that the lack of guidelines set out in the statutes is a denial of his due process rights.  In his sixth issue, Appellant argues that section 3.03 is unconstitutionally vague because it does not state whether the judge or the jury is vested with the right to determine whether sentences will run consecutively.  *See* Tex. Penal Code Ann. § 3.03.

The court of criminal appeals has held that these types of challenges are ones which will be forfeited if not preserved in the trial court.  *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Carmell v. State*, 331 S.W.3d 450, 460 (Tex. App.—Fort Worth 2010, pet. ref'd).  Appellant did not challenge the constitutionality of either section 3.03 of the penal code or article

---

[7]Even if Appellant had preserved his complaint, we note that the court of criminal appeals has held that the *Apprendi* line of cases does not apply to a trial court's decision to cumulate jury-imposed sentences.  *See Alameda v. State*, 235 S.W.3d 218, 223–24 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 629 (2007).

42.08 of the code of criminal procedure in the trial court. He therefore has not preserved these complaints for our review. We overrule Appellant's fifth and sixth issues.[8]

Appellant's fourth issue, on the other hand, focuses on the denial of his constitutional right to a trial by jury, and thus "the general rules for preservation of error do not apply." *See Marrow v. State*, 169 S.W.3d 328, 330 (Tex. App.—Waco 2005, pet. ref'd); *see also Sanchez v. State*, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003) (noting that the constitutional right to a jury trial is one which cannot be forfeited absent an express waiver). We will therefore address that issue.

In his fourth issue, Appellant argues that cumulating the sentences violated his right to have a jury assess his punishment. The court of criminal appeals has held that a trial court's order that jury-assessed sentences be served consecutively does not violate a defendant's right to a trial by jury because it is a

---

[8]Even if Appellant's fifth and sixth issues had been preserved, we note that both of his issues have been thoroughly addressed by the court of criminal appeals. In *Barrow v. State*, 207 S.W.3d 377, 380–82 (Tex. Crim. App. 2006), the court of criminal appeals overruled the appellant's argument that his right to due process had been violated by allowing the trial judge to decide whether to cumulate sentences. The court stated, "[T]he discretionary decision whether to cumulate individual sentences no more violates due process than does the decision, by judge or jury, of what particular sentence to impose within the statutorily prescribed range of punishment." *Id*. at 381. It also noted that the decision to cumulate has been assigned by statute to the trial court, not to the jury. *Id*. at 380 ("[T]he Texas Legislature has assigned the decision to cumulate, *vel non*, in Section 3.03 of the Penal Code and Article 42.08 of the Code of Criminal Procedure, to the trial court.").

14

normative, discretionary function that does not turn on findings of fact. *Alameda*, 235 S.W.3d at 224.; *Barrow*, 207 S.W.3d at 380. We therefore overrule Appellant's fourth issue.

### III. Conclusion

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL: GABRIEL, J.; LIVINGSTON, C.J.; and MEIER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 15, 2011

15