# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00116-CR

**John William Ussery, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 05-264-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

John William Ussery was charged with a three-count indictment alleging indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11 (West 2003). A jury found him guilty on each of the counts and assessed punishment at twenty years' confinement. The trial court sentenced appellant to twenty years on each count and ordered his sentence in count two to run consecutively to his sentence in count one and his sentence in count three to run concurrently. In five points of error on appeal, appellant challenges (i) the trial court's dismissal of a juror, (ii) the admission of illegally seized evidence and the court's failure to properly instruct the jury with regard to the evidence, and (iii) the trial court's failure to allow a hearing on appellant's motion for a new trial. For the reasons that follow, we affirm the judgment.

The evidence at trial showed that in the spring of 2004, fourteen-year-old T.G. was living with her grandparents who were her legal guardians. In pursuing her hobby of horse riding,

she met appellant, a 60-year-old horse trainer, at a horse show at the Georgetown show barn. Shortly after meeting, appellant and T.G. began to exchange e-mails which became sexually suggestive and then sexually explicit. They also engaged in telephone conversations.

On one occasion, when her grandparents were not at home, appellant came to the house and engaged in sexual conduct with T.G. On another occasion, T.G. visited appellant at his horse trailer parked outside the show barn where they engaged in sexual conduct. Lester Garner, T.G.'s grandfather and legal guardian, began to suspect appellant was engaging in improper conduct with his granddaughter. He began to record T.G.'s telephone calls and arranged for his wife to install spyware software on the family computer to monitor T.G.'s e-mail communications with appellant. At trial, appellant objected to the admission of the recorded telephone conversations and e-mails on the basis that they were illegally intercepted by Mr. Garner.

Because there is no challenge to the legal and factual sufficiency of the evidence, we will discuss the relevant facts more fully when addressing the particular legal issue raised.

## ANALYSIS

### *Juror Dismissal*

In his first two points of error, appellant challenges the trial court's dismissal of a juror as disabled. He urges that the trial court erred in dismissing the juror and that the trial court committed structural error because the juror's removal reduced the State's burden of proof by allowing a conviction by eleven jurors.

At the beginning of the second day of the trial, Juror Florence informed the trial court in chambers on the record that she knew one of appellant's family members and that "I feel sick to

2

my stomach that's all." She advised the court that she was close friends with appellant's wife's brother and sister-in-law. Because she knew of appellant only by the nickname of his initials, J.W., she had not made a connection during jury selection that he was related to her friend, the sister-in-law, with whom she communicated on a daily basis. The friend informed Juror Florence that she had seen news of the trial on the television news and that the juror was probably serving on her relative's jury. The juror and her friend did not discuss the case. In response to the trial court's questioning, Juror Florence told the judge that, despite her feelings of unease caused by her friendship with appellant's sister-in-law, she could remain fair and unbiased as a juror in appellant's case.

The trial court informed the parties of his conversation with Juror Florence. The State first suggested that, unless the juror was "emotionally unable" to serve, they continue with the jury as constituted. Appellant requested a mistrial, stating "I do not want to take the chance that this will adversely affect her and by adversely affecting her, it will adversely affect the fairness of this trial." The trial court then explained that the "first remedy" was a consideration of whether the juror should be dismissed and the case proceed with the eleven remaining jurors or whether the juror be left on the jury and the case proceed: "[T]he sequence we do these in is do we remove the juror, and then we deal with the mistrial." Defense counsel then requested that the juror be dismissed. The trial court granted the request and dismissed the juror, stating:

> Based upon the entirety of my conversation with her, including the flushed face that she had when she came in, the fact that she said she was sick to the stomach—to her stomach, and despite the fact that I feel like I was able to calm her down and get her to relax, she clearly was upset about this. She clearly had had a difficult night. And all that seemed to me to be unrelated to the facts of the case and to be related to the

3

fact that this had been bothering her and at this time, I'm going to find that she is a disabled juror. We could develop the record more if y'all want to, but since you've already agreed—the defense has asked that she be removed and the State has agreed, I don't know if that's what we should do at this point or it would be appropriate.

The following colloquy then occurred:

[Prosecutor]:	Yeah, Judge. If they request it and we agree, I don't think you need to develop the record any further.

[Defense Counsel]:	I think that's right, Your Honor.

Court:	All right. I will remove her on a finding that she's a disabled juror and on the agreement of the—or the request of the defense and the agreement of the State.

Defense counsel renewed his request for mistrial and objected to "being forced to continue with 11 jurors." The court overruled the motion for mistrial.

The United States Constitution does not require a particular number of jurors necessary to constitute a jury panel, only that the jury must be impartial. U.S. Const. amend. VI. The Texas Constitution, however, does require a jury of twelve members for cases tried in district courts, but provision is made for the legislature to modify the rule to authorize verdicts by less than twelve. *Sneed v. State*, 209 S.W.3d 782, 785 (Tex. App.—Texarkana 2006, pet. ref'd), *cert. denied*, 128 S. Ct. 537, 2007 U.S. LEXIS 11986 (2007); *Hegar v. State*, 11 S.W.3d 290, 295 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing Tex. Const. art. V, § 13). Article 36.29 of the code of criminal procedure speaks to a juror becoming disabled:

(a) Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

Tex. Code Crim. Proc. Ann. art. 36.29 (West Supp. 2007).[1]

Appellant contends that a juror's bias or prejudice for or against a defendant does not render a juror "disabled" and that the juror's "comments and indirect knowledge of appellant would not have been sufficient to sustain a challenge for cause to her fitness to sit as a juror" in the case and she was, therefore, not disabled. But appellant did not assert in the court below that the juror was not disabled. In the trial court, appellant argued that a mistrial was the appropriate remedy and that he should not be compelled to continue the trial with only eleven jurors.

A complaint must be properly preserved before it can be presented on appeal. Tex. R. App. P. 33.1. The record must show that the complaint was timely presented to the trial court, that the defendant stated the grounds for the objection with sufficient specificity to make the trial court aware of the complaint or that the specific grounds were apparent from the context, and that the trial court ruled on the objection. *Id*. A general or insufficiently specific objection does not preserve an error for appeal. *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990).

This case is similar to *Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003), in which the defendant first requested a mistrial but, after the trial court denied the request, then

---

[1] We note that the statute has been amended, but the amendments are not relevant to this appeal. Therefore, we cite to the current version of the statute.

proposed the dismissal of the juror in question. The trial court excused the juror. On appeal, the defendant argued that the trial court erred in dismissing the juror under article 36.29. Jones contended that the remedy of discharge was inappropriate because bias is not a disability under article 36.29. *Id*. at 784.

The court of criminal appeals concluded in *Jones* that, because appellant requested the discharge as an alternative to mistrial, he was estopped from complaining about it:

> Appellant had the option of contending at trial that mistrial was the sole legal and appropriate remedy, and he could have declined to suggest or support any alternatives. By proposing alternatives he is estopped from complaining on appeal about the judge having accepted one of them. Parties are often faced with difficult choices, but facing a tough dilemma does not create a claim or excuse a party for the option chosen.

*Id*.

In this case, appellant initially requested a mistrial but, after the trial court failed to grant his request, requested the dismissal of the juror. Appellant asked that the juror be dismissed as an alternative to mistrial, and then appellant agreed that the parties need not develop the record further to make any additional showing as to disability. The trial court proceeded to make a finding that the juror was disabled under article 36.29. We conclude that appellant is estopped from complaining about continuing the trial with eleven jurors and that the trial court was within its discretion in finding the juror disabled within the meaning of article 36.29. We overrule appellant's first and second points of error.

6

*Admissibility of Wire and Electronic Communications*

### 1. Vicarious Consent

In his third point of error, appellant contends that the communications intercepted by the Garners were obtained in violation of the statute barring the interception of nonconsensual communications, *see* Tex. Penal Code Ann. § 16.02 (West Supp. 2007),[2] and should have been excluded pursuant to article 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). We review a trial court's decision to admit evidence subject to an abuse of discretion standard of review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We do not disturb its ruling on appeal unless it falls outside the "zone of reasonable disagreement." *Id*.

Article 38.23(a) of the code of criminal procedure specifies that "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a). The penal code addresses the unlawful interception of communications, stating that a person commits an offense if he intentionally intercepts a wire or electronic communication. Tex. Penal Code Ann. § 16.02(b)(1). The statute lists various affirmative defenses to prosecution under section 16.02(b), including the following:

It is an affirmative defense to prosecution under Subsection (b) that:

---

[2] We note that the statute has been amended, but the amendments are not relevant to this appeal. Therefore, we cite to the current version of the statute.

7

. . . .

>> (4) a person not acting under color of law intercepts a wire, oral, or electronic communication, if:
>>
>>> (A) the person is a party to the communication; or
>>>
>>> (B) one of the parties to the communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing an unlawful act.

*Id.* § 16.02(c)(4). The statute does not specify that consent can be given vicariously by a parent or guardian.

In *Alameda v. State*, 235 S.W.3d 218 (Tex. Crim. App. 2007), the court of criminal appeals upheld the conviction of a defendant convicted of aggravated sexual assault. At trial, the State offered, and the trial court admitted, a recorded telephone conversation between the defendant and the twelve-year-old victim. The telephone conversation had been recorded by the victim's mother without her daughter's knowledge or consent. The defendant argued that the recording should be suppressed pursuant to article 38.23 of the code of criminal procedure because the mother's unauthorized recording of the conversation constituted illegal wiretapping under section 16.02. *Id.* at 220.

Recognizing that no Texas case had addressed a parent's authority to vicariously consent to the recording of a child's telephone conversation, the court looked to the Sixth Circuit's decision in *Pollock v. Pollock*, 154 F.3d 601 (6th Cir. 1998), the leading case regarding the

vicarious-consent doctrine in the context of the federal wiretap statute.[3]  In upholding the trial court's

decision that the parent had not violated the federal prohibition of wiretapping when she recorded

conversations between her daughter and the plaintiff, the *Pollock* court held:

> [A]s long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording.

*Id.* at 610.  Referencing various state and federal cases addressing the vicarious-consent doctrine,

the court of criminal appeals recognized that the doctrine was necessary because children lack both

the capacity to consent and the ability to give actual consent.  *Alameda*, 235 S.W.3d at 223.  The

court then adopted the *Pollock* court's standard, recognizing the legality of a parent's vicarious

consent if the parent had an "objectively reasonable, good-faith belief that consenting for the child

was in the child's best interest."  *Id*.  The court then upheld the lower court's determination based

on the evidence at the suppression hearing.  *Id*.

Appellant acknowledges that this case is "similar to the facts of *Alameda*."  But he

argues that the trial court erred in admitting the evidence because "a determination must be made

as to whether an objectively reasonable, good-faith belief allows a parent or guardian to violate the

---

[3]  The court recognized that the federal wiretap statute is "substantively" the same as the Texas statute.  *Alameda v. State*, 235 S.W.3d 218, 222 (Tex. Crim. App. 2007).  The federal counterpart to the consent exception is found in 18 U.S.C. § 2511(2)(d) (2007) and states that it is not unlawful for a person not acting under color of law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act.

privacy interests of the child." He urges there is nothing in the record to demonstrate that the Garners had a reasonable and objective belief that justified their interception of the telephone recordings and e-mail messages. Unlike *Alameda* in which the defendant filed a motion to suppress and the court of appeals viewed the evidence in the light most favorable to the trial court's rulings, in this case there was no motion on the issue. During Mr. Garner's testimony, appellant objected to the admission of the intercepted communications.

The trial court conducted a hearing outside the presence of the jury. Mr. Garner testified. The trial court found that Mr. Garner had an objective, good faith basis for recording the calls and stated on the record the basis for his ruling: that appellant indicated that no parent could be present at the lessons, that appellant parked his trailer away from everyone else at the horse shows, and that the minor T.G. was engaging in extended telephone conversations and e-mail exchanges with appellant, a 60-year-old man.

Although the chronology of events is unclear, at or about the time T.G.'s guardians decided to intercept T.G.'s communications with appellant, there was testimony that they knew that appellant and T.G. were spending time alone together at horse shows; appellant parked his horse trailer in an isolated location behind the show barn; appellant wanted to give T.G. riding lessons at his residence but only if Mr. Garner was not present; T.G. was spending a lot of time communicating with someone by telephone and e-mail; and appellant had been suspected of "being involved with" another minor female he met at a horse show. Viewing the evidence in the light most favorable to the trial court's rulings, we hold that as a matter of law, the Garners had a good faith,

10

objectively reasonable belief that intercepting T.G.'s telephone conversations and e-mails was in her best interest.

Because we hold that the trial court correctly determined that T.G.'s guardians had a good faith, objectively reasonable belief that intercepting T.G.'s telephone conversations and e-mails was in her best interest, we hold that the trial court did not err in allowing this evidence to be admitted over appellant's objection. We overrule appellant's third point of error.

### 2. Jury Instruction

Appellant argues in his fourth point of error that the trial court erred by denying his request for an article 38.23(a) instruction regarding the legality of the interception of the audio-taped conversations. Appellant requested that because the audiotapes were played to the jury, the jury should be able to determine whether Mr. Garner's decision to tape the conversations was based upon a good faith, objectively reasonable belief that recording the conversations was in the child's best interest. Appellant proffered a jury instruction that was denied by the trial court.[4]

---

[4] The jury instruction denied by the trial court read as follows:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. It is a violation of Texas law to intercept, record or use electronic communications of any kind, unless one of the parties to the communication consents to the intercept or recording. Therefore, if you believe, or have a reasonable doubt, that the evidence in this cause—consisting of intercepted telephone or email communications, or the testimony pertaining to such intercepted or recorded electronic communications—was obtained in violation of the law governing intercept or recording of electronic communications, then and in such event, you shall disregard any such evidence so obtained.

11

Article 38.23(a) provides as follows:

> (a)  No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case *where the legal evidence raises an issue hereunder*, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a) (emphasis added).  The question, therefore, is whether the legal evidence raises an issue as to whether the intercepted telephone or e-mail communications were obtained in violation of law.  Appellant argues that, because there were disputed facts regarding whether T.G.'s guardians had a reasonable belief that the intercepts were in the child's best interest, an article 38.23(a) instruction was required to inform the jury of their right to disregard the evidence of the fruits of the interception if they found the belief unreasonable.  Because the disputed evidence does not raise a fact issue as to whether the guardians had a reasonable belief so as to warrant the interceptions, we conclude that an article 38.23(a) instruction is not required.  *See Madden v. State*, No. PD-1243-05, 2007 Tex. Crim. App. LEXIS 1802, at *14-15 (Tex. Crim. App. Dec. 19, 2007); *Garza v. State*, 126 S.W.3d 79, 84-85 (Tex. Crim. App. 2004) ("[A]n Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained.").

The court of criminal appeals' decision in *Madden v. State* was announced shortly after briefing in the instant case was completed.  It is dispositive of the issue here.  A defendant's

right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *See Madden*, 2007 Tex. Crim. App. LEXIS 1802, at \*14-15 (citing *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000) (jury instruction can operate "only if there is a contested issue of fact about the obtaining of the evidence . . . . There is no issue for the jury when the question is one of law only.")). There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under article 38.23(a):

(1)      The evidence heard by the jury must raise an issue of fact;

(2)      The evidence on that fact must be affirmatively contested; and

(3)      That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Id.* at \*15 (citing 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 4.194 (2d ed. 2001)). In *Madden*, the court stated:

> There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Id.* (footnotes omitted). As in *Madden*, here there was no dispute as to how the evidence was obtained. There were also sufficient facts—apart from any disputed ones—to support the lawfulness of the challenged conduct. In any event, the only determination to be made in this case was of a legal

13

nature. Appellant's proposed instruction did not ask the jury to decide a disputed issue of historical fact. It asked the jury to decide a question of law—whether the guardians had a reasonable, good faith belief that the interceptions were in the child's best interest. The court in *Madden* observed that the term "reasonable suspicion" was not the type of suspicion, hunch, or notion that an ordinary person might have. "Rather, it is a legal term of art." *Id.* at *20. The court then concluded that it is the job of the trial judge to decide the quality and quantity of facts necessary to establish "reasonable suspicion." Only if the underlying facts are disputed does the judge ask the jury to decide whether the actor's belief in those facts was reasonable. *Id.*

Thus, appellant's proposed instruction was defective: it failed to identify a disputed fact issue upon which the legality of the acquisition of the interceptions turned. Moreover, the reasonableness of the guardians' good faith belief was not a factual issue, but a legal issue. The trial court did not err in refusing appellant's requested jury instruction. We overrule appellant's fourth point of error.

### 3. Authentication

Appellant complains in his fifth point of error that the e-mail communications were improperly admitted over his objection because the State failed to authenticate the electronic recording evidence. *See* Tex. R. Evid. 901(a) ("requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"). Appellant objected to the admission of the e-mails on the grounds that they were unlawfully obtained and that the State failed to call as a witness the person who actually installed the "spyware" on the computer and printed out the e-mails because

14

Mr. Garner acknowledged that he knew little about computers. But appellant did not object to the e-mails on the authentication ground, and he has therefore failed to preserve this issue. *See* Tex. R. App. P. 33.1. Even had appellant preserved this issue, T.G. testified, identifying the e-mail communications as fair and accurate copies of actual e-mails she exchanged with appellant. She thus provided testimony authenticating the e-mails. We overrule appellant's fifth point of error.

***Motion for New Trial***

In his sixth point of error, appellant contends that the trial court erred in failing to hold a hearing on his motion for new trial. Asserting that there are facts outside the record relating to his claim that the trial court was required to address in an evidentiary hearing, appellant seeks a remand for such a hearing.

We review a trial court's refusal to hold an evidentiary hearing on a motion for new trial for an abuse of discretion. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002). A trial court abuses its discretion in denying a hearing on a timely filed motion for new trial if the motion raises a matter outside the record upon which relief could be granted. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 22; *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.).

The right to a hearing on a motion for new trial is not absolute. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005); *Reyes v. State*, 849 S.W.2d 812, 815-16 (Tex. Crim. App. 1993). As a prerequisite to obtaining a hearing on a motion for new trial, a defendant must support his motion with an affidavit showing the truth of the grounds for attack. *Martinez*, 74 S.W.3d at 21. Generally, a trial court should hold a hearing if the motion and attached affidavit

raise matters not determinable from the record that could entitle the accused to relief. *Wallace*, 106 S.W.3d at 108. To be sufficient to entitle the defendant to a hearing, the motion for new trial and supporting affidavit need not establish a prima facie case for a new trial; however, the motion and affidavit must reflect that reasonable grounds exist for holding that such relief could be granted. *Id*. Affidavits that are conclusory in nature and unsupported by facts are insufficient to put the trial court on notice that reasonable grounds for relief exist. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). The purpose of the hearing is to give the defendant an opportunity to fully develop the matters raised in his motion that, if proved at a hearing, could entitle him to relief. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21.

Appellant raised the following grounds in his motion for new trial and affidavits supplied by appellant and his counsel: (1) that appellant did not consent to the dismissal of the juror; (2) that not all recorded conversations were turned over to the defense prior to trial; and (3) that trial counsel failed to interview two character witnesses prior to trial who would have attacked T.G.'s credibility and reputation for truthfulness. In the motion, appellant does not assert that these grounds involve facts outside the record nor did he allege any facts which, if proven, would entitle him to the relief requested.

As to the first ground, the trial court made findings that the juror was disabled that remain unchallenged by appellant. With regard to the second ground, numerous communications were introduced showing the nature of the relationship between appellant and T.G.; appellant does not assert what information could be provided to contradict the evidence introduced at trial. The conversation between appellant and another man referenced in the affidavit was provided to

16

appellant during discovery; its admission was discussed at trial and the evidence was excluded by the trial court. As to the third ground, appellant suggests that his counsel was ineffective for failing to interview two possible impeachment witnesses. There is discussion on the record of the two witnesses who appear on the State's witness list but were not served with subpoenas. The parties discuss the possibility of contacting them for potential testimony but reach no conclusion.

Appellant's motion for new trial and his affidavit and that of his counsel were not sufficient to put the trial judge on notice that reasonable grounds existed for holding that relief could be granted. Because the motion and affidavits are conclusory, allege insufficient facts, and fail to allege matters outside the record upon which relief can be granted, the trial court did not err in failing to hold a hearing on the motion. We overrule appellant's sixth point of error.

**CONCLUSION**

Having overruled appellant's points of error, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   January 30, 2008

Do Not Publish

17